## STATE OF CONNECTICUT *v.* PETER MANDRELL
### (11893)

HEALEY, SANTANIELLO, CALLAHAN, F. FREEDMAN and GILL, Js.

Argued December 13, 1985—decision released March 18, 1986

*Michael J. McClary,* certified legal intern, with whom were *Todd D. Fernow,* and, on the brief, *Michael R. Sheldon* and *Richard Hoffman,* certified legal intern, for the appellant (defendant).

*Steven M. Sellers,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Carl Schuman,* assistant state's attorney, for the appellee (state).

F. FREEDMAN, J. After a trial to the court, *Kline, J.,* the defendant, Peter Mandrell, also known as Paul MacDonald, was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3),[1] assault of a victim sixty years or older in the second degree in violation of General Statutes § 53a-60b,[2] for-

---

[1] General Statutes (Rev. to 1979) § 53a-134 provides: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony."

[2] General Statutes (Rev. to 1979) § 53a-60b provides: "ASSAULT OF VICTIM SIXTY OR OLDER IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of assault of a victim sixty or older in the second degree, when he commits assault in the second degree under section 53a-60 or larceny in the second degree under section 53a-123 (a) (3) and the victim of such assault or larceny has attained at least sixty years of age or is blind or physically disabled, as defined in section 1-1f.

"(b) No person shall be found guilty of assault in the second degree or larceny in the second degree under section 53a-123 (a) (3) and assault of a victim sixty or older in the second degree upon the same incident of assault or larceny, as the case may be, but such person may be charged and prosecuted for all such offenses upon the same information.

"(c) Assault of a victim sixty or older in the second degree is a class D felony."

General Statutes (Rev. to 1979) § 53a-60 provides: "ASSAULT IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another

gery in the second degree in violation of General Statutes § 53a-139 (a) (2), and criminal impersonation in violation of General Statutes § 53a-130 (a) (1). On appeal the defendant claims (1) that the trial court abused its discretion in admitting evidence of a prior crime committed by the defendant, and (2) that the conviction for assault was not supported by the evidence.

From the evidence presented at trial, the court could have reasonably found the following facts. On May 17, 1980, at about 3:15 p.m., sixty year old John Piscotty was working as a clerk at the Towne Liquor Store at 350 Asylum Avenue in Hartford. Two black males, one of them identified as the defendant, entered the store and approached the sales counter, behind which Piscotty was standing. The second man asked Piscotty for a bottle of scotch and then for a bottle of rum. As Piscotty reached to retrieve the bottle of rum, the second man came around the counter and pressed into Piscotty's back something "very, very hard," which Piscotty thought to be a gun. Piscotty was then ordered to go to the back room and to get down on the floor. The second man then bound Piscotty's hands and feet and gagged him.

Meanwhile, the defendant remained in the front room of the store, where he attempted to open the cash reg-

person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or (4) for a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical impairment or injury to another person by administering to such person, without his consent, a drug, substance or preparation capable of producing the same; or (5) he is committed to the commissioner of correction, or is a parolee from a correctional institution and with intent to cause physical injury to an employee of the department of correction or an employee or member of the board of parole, he causes physical injury to such employee or member."

ister. After unsuccessful efforts, the defendant, using profanity, called to the second man to bring Piscotty to the front room. The second man unbound Piscotty and took him to the front room where the defendant, swinging his arms wildly, shouted at Piscotty to open the register. While at the register, Piscotty was face to face with the defendant for ten to fifteen seconds. The second man opened the register with the aid of Piscotty's instruction. Piscotty was then taken back to the storage room and bound again by the second man. The second man took a wallet and about $300 from Piscotty's pockets and yelled to the defendant that he had gotten the money. He then joined the defendant in the front room.

Piscotty heard some low talking in the front room followed by soft footsteps. He then received two blows to his head from an object which felt like a bottle. Piscotty did not see who hit him. A broken tenth size bottle was later found near the area where he was struck. At some point during the robbery, the defendant had stood near the counter where the same type bottle was shelved. Piscotty, however, never saw either man with the bottle.

Shortly after he was struck, Piscotty heard the sound of a buzzer, which indicated that the front door had been opened. He freed himself and reached for the telephone. At that point, a man entered the store, spoke to Piscotty and ran to a police cruiser which was parked around the corner.

A few minutes later Officer Sabastian Magnano, one of the officers in the cruiser, entered the store. Piscotty gave him a description of the two men, which Magnano broadcast over his portable radio. Magnano recalled having seen two men fitting this description while he was in the cruiser shortly before he received the robbery report.

Officers James Beaulieu and James W. Howard III, who were one block from the store, heard the report and descriptions over the radio of their cruiser. A few moments later they saw a black man fitting the description of the defendant near the Federal Cafe. The defendant ran into the cafe and then out the side door into the arms of Beaulieu, whereupon the defendant said, "okay, I did it. You got me." The defendant was then handcuffed and placed in the back seat of the cruiser. The officers observed that the pockets of the defendant's pants appeared "bulgy" and that currency was sticking out of them. The defendant was brought to the Towne Liquor Store, where Piscotty identified him.

After the identification, Magnano found $345 in the back of the cruiser in which the defendant had been seated. Howard and Beaulieu observed that, at this time, the defendant's pockets appeared empty. The sum of $382.79, of which $35 was in change, had been taken from the store's cash register.

At the close of the evidence, the defendant moved for a judgment of acquittal on all charges. This motion was denied by the court.

The defendant's first claim on appeal is that the trial court abused its discretion in admitting evidence of a prior crime committed by the defendant. At trial, the state offered into evidence the testimony of Donald G. Guilmette, the victim of a 1975 robbery to which the defendant had pleaded guilty and received a sentence of not less than four and one-half nor more than nine years. Guilmette testified that on March 8, 1975, two black men entered the Picadilly Package Store at 280 Asylum Street in Hartford, at which he worked. One of the men grabbed a customer around the neck, put a gun to the customer's head, and beat the customer. The other man went behind the counter and ordered

Guilmette to open the register. The first man took the customer to the back room, told him to lie down, and then, using profanity, called for the second man to bring Guilmette to the back room, whereupon Guilmette was also told to lie down on the floor. Guilmette testified that the first man was very aggressive, and very violent. Guilmette was subsequently twice struck on the head by the first man with two half-gallon wine bottles. Guilmette identified the defendant as the first man. This testimony was admitted at trial over the defendant's objection. The court admitted this testimony to prove intent to cause injury, use of a dangerous instrument, identity of the user of the dangerous instrument and common scheme.

Evidence of prior convictions committed by a defendant, although not admissible to prove guilt of the crime charged, may be admissible for other purposes, " 'such as intent, identity . . . or a system of criminal activity'; *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982); or an element of the crime charged. *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982)." *State* v. *Shindell,* 195 Conn. 128, 133, 486 A.2d 637 (1985). A two-pronged analysis has been adopted to determine the propriety of admitting evidence of other crimes. *State* v. *Shindell,* supra, 134. "First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions." *State* v. *Braman,* 191 Conn. 670, 676, 469 A.2d 760 (1983). Second, the probative value of the evidence must outweigh its prejudicial effect. Id.

Evidence of other crimes is relevant to identity, a common scheme, or an element of the crime presently charged, if "the methods used are sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other. Much more is required than the fact that the offenses fall into

the same class. 'The device used must be so unusual and distinctive as to be like a signature.' " *State* v. *Ibraimov,* supra, 354.

In the present case, both robberies took place in liquor stores located close to each other on Asylum Street in Hartford and were committed by two black males. In each robbery the defendant was identified as using profanity and exhibiting aggressive, violent behavior, the store clerk was forced to lie down on the floor in the store's back room and the clerk was twice struck on the head with a liquor bottle. Although a gun was openly displayed in the first robbery, and not in the second, the store clerk in the second robbery testified that a very hard object, which felt like a gun, was pressed into his back by one of the perpetrators.

The defendant points to the following dissimilarities: remoteness in time between the robberies, the time of day at which the robberies occurred and the size of the bottles used. While there was a five year period between the two robberies, the defendant was incarcerated during much of that time. The difference in the time of day at which the robberies occurred and the size of bottle used in the assault are merely two factors for the court to consider in conjunction with all other factors. See *State* v. *Braman,* 191 Conn. 670, 680, 469 A.2d 760 (1983).

We find that the methods used in the two crimes were sufficiently similar and unique to warrant a reasonable inference that the defendant committed both crimes.

The second prong of the analysis requires the trial court to determine in its exercise of its judicial discretion whether the prejudicial tendencies of the evidence outweigh its probative value. *State* v. *Braman,* supra, 681. " 'Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done.' " *State* v. *Falby,* supra, 23. Before admit-

ting the evidence the trial court conducted a full hearing, heard the claims, and performed a balancing test to determine if the prejudicial tendencies outweighed the probative value of the evidence. It cannot be said that the trial court's conclusion that the probative value outweighed the prejudicial value was an abuse of discretion. There is no error in the admission of the prior crime evidence.

The defendant's second claim of error is that there was insufficient evidence to support his conviction for assault of a victim sixty years or older in the second degree, in violation of General Statutes § 53a-60b.[3] That statute, at the time in question, provided in relevant part, that a person is guilty of assault of a victim sixty or older in the second degree when he commits assault in the second degree under § 53a-60 and the victim is at least sixty years of age. General Statutes § 53a-60 provides in pertinent part that a person is guilty of assault in the second degree when, with intent to cause physical injury to another person, he causes such injury to such person by means of a dangerous instrument.

The defendant argues that the court could not have found beyond a reasonable doubt that he and not the second man wielded the bottle which caused Piscotty's injury. Therefore, the defendant argues that the element of identity was not proved beyond a reasonable doubt.

" ' "Each essential element of the crime charged must be established by proof beyond a reasonable doubt." ' " *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983); *State* v. *Haddad,* 189 Conn. 383, 387–88, 456 A.2d 316 (1983). When a finding of guilty is challenged because of insufficient evidence, the issue is whether the court could have reasonably concluded,

---

[3] See footnote 2, supra.

upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the finding of guilty beyond a reasonable doubt. *State* v. *Scielzo,* supra; *State* v. *Haddad,* supra, 387. The evidence presented at trial must be construed in a fashion most favorable to sustaining the finding of guilty. Id.

At trial the only evidence produced concerning the identity of the assailant was (1) Piscotty's testimony that the defendant had been standing within arm's length of the bottle used in the assault, and (2) Guilmette's testimony that the defendant struck him with a bottle during the 1975 robbery. Even if this evidence is construed in a light most favorable to sustaining the court's finding, it does not exclude the reasonable possibility that it was the second man, and not the defendant, who struck Piscotty. Although the trier may draw reasonable inferences from the facts proved, it may not resort to speculation and conjecture. *State* v. *Haddad,* supra, 388. Where it cannot be said that the trier of fact could find guilt proved beyond a reasonable doubt, then a conviction cannot stand. *State* v. *Scielzo,* supra, 197.

The trial court erred in denying the defendant's motion for judgment of acquittal on the charge of assault of a victim over sixty years of age because there was insufficient evidence to find that he committed that crime. The judgment of conviction for assault of a victim over sixty years is set aside and the case is remanded to the trial court with direction to render a judgment of acquittal on that charge.

In this opinion the other judges concurred.