## STATE OF CONNECTICUT *v.* LAWRENCE J. MOROWITZ (12571)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued May 6—decision released July 15, 1986

*Raymond B. Rubens,* with whom was *Veronica E. Reich,* for the appellant (defendant).

*Susan C. Marks,* deputy assistant state's attorney, with whom, on the brief, were *Bruce Hudock,* assistant state's attorney, and *Eugene J. Callahan,* state's attorney, for the appellee (state).

PETERS, C. J. The sole issue on this appeal is whether evidence of the defendant's prior misconduct was properly admitted at his trial. The defendant, Lawrence Morowitz, was convicted of sexual assault in the second degree, in violation of General Statutes § 53a-71 (a) (2),[1] and sexual assault in the fourth degree, in violation of General Statutes § 53a-73a (a) (1) (B),[2] and sentenced to a term of imprisonment of four years. He appeals from this judgment.

The jury could reasonably have found the following facts. In early 1983, the victim consulted the defendant, a practicing podiatrist in Stamford, concerning problems she was having with her feet. Following the initial examination, the defendant scheduled surgery

---

[1] At the time of the offense, General Statutes (Rev. to 1983) § 53a-71 (a) (2) provided: "Sec. 53a-71. SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY: NINE MONTHS NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is . . . (2) mentally defective, mentally incapacitated or physically helpless."

[2] At the time of the offense, General Statutes (Rev. to 1983) § 53a-73a (a) (1) (B) provided: "Sec. 53a-73a. SEXUAL ASSAULT IN THE FOURTH DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is . . . (B) mentally defective, mentally incapacitated or physically helpless."

in his office for the victim on several dates over the next few months. On at least two such occasions, having given the victim medication and an injection to put her to sleep, the defendant sexually assaulted her. The defendant was subsequently arrested in connection with these incidents.

During the trial, over defense objections, the state presented testimony that the defendant had committed a similar sexual assault on a female patient approximately three years prior to the incidents here at issue. On appeal, the defendant claims that the trial court erred in admitting this testimony because: (1) its prejudicial impact outweighed its probative value, the two assaults being neither sufficiently similar nor proximate in time; and (2) the charges resulting from the earlier assault had been dismissed and the records erased following the defendant's successful completion of the conditions of his accelerated rehabilitation, granted pursuant to General Statutes § 54-56e. We find no error.

The rules governing the admissibility of evidence of a criminal defendant's prior misconduct are well established. Although evidence of prior unconnected crimes is inadmissible to demonstrate the defendant's bad character or to suggest that the defendant has a propensity for criminal behavior; *State* v. *Brown,* 199 Conn. 47, 56, 505 A.2d 1225 (1986); *State* v. *Shindell,* 195 Conn. 128, 133, 486 A.2d 637 (1985); *State* v. *Braman,* 191 Conn. 670, 675, 469 A.2d 760 (1983); McCormick, Evidence (3d Ed. 1984) § 190, pp. 557–58; such evidence may be admissible for other purposes, such as "to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency." *State* v. *Lizzi,* 199 Conn. 462, 468, 508 A.2d 16 (1986); *State* v. *Brown,* supra, 56; *State* v. *Shindell,* supra, 133–34. Our analysis of the defendant's initial

claim, therefore, turns on an inquiry into first, whether the evidence was relevant and material to an acceptable purpose, and second, if so, whether its probative value outweighed its prejudicial tendency.

The trial court admitted the evidence of the earlier sexual assault as tending to establish a common design or plan to assault sedated female patients, and thus as probative of the defendant's motive and intent in the present case. When evidence of prior misconduct is offered to show a common plan or design, "the marks which the [earlier] and the [present] offenses have in common must be such that it may be logically inferred that if the defendant is guilty of one he must be guilty of the other." *State* v. *Esposito,* 192 Conn. 166, 172, 471 A.2d 949 (1984). It is not enough that the two offenses are similar. To establish a common design, the characteristics of the two offenses must be sufficiently distinctive and unique "as to be like a signature." McCormick, supra, p. 560; *State* v. *Mandrell,* 199 Conn. 146, 152, 506 A.2d 100 (1986); *State* v. *Braman,* supra, 677. In the present case, the trial court found "the circumstances . . . so unique, the factual situation so unusual, and the similarities between the alleged incidents . . . so striking" that they established a common design. In order to resolve the defendant's claim, therefore, we must examine the proffered evidence and compare it to the charged offense.

At a hearing held outside the presence of the jury, the victim of the earlier assault testified that, in January, 1980, she had consulted the defendant concerning problems with her feet. At the time, she was a twenty-six year old married woman. After an initial examination, the defendant scheduled her for foot surgery. He instructed her to take a capsule of nembutal one half hour before coming to his office for the surgery. She followed these instructions and arrived at the defendant's office feeling "light-headed" and "a

bit unsteady." Only the defendant was present in the office when she arrived. The defendant instructed the witness to remove her street clothes and to put a surgical gown over her underwear. The defendant then assisted her into the treatment room, helped her into a reclining chair, and gave her an injection of valium. Following the injection, the witness fell asleep, returning to consciousness some time later when she "became aware of . . . a penetrating sensation inside [her] vagina." She fell asleep again, and next became aware of the defendant massaging her thighs and breast. When she opened her eyes, she saw that the defendant was holding her underwear.

We agree with the trial court that the details of the earlier assault, as related by the former victim, are sufficiently similar to the details of the presently charged assault to be probative of a common design or plan on the part of the defendant to use his position as a podiatrist to assault sedated female patients. The present victim testified that, at the time she first consulted the defendant in 1983, she was a twenty-nine year old married woman. Following an initial consultation, the defendant scheduled her for foot surgery on various dates in early 1983. Prior to each scheduled date, the defendant instructed her to take two tablets containing a tranquilizer one half hour before coming to the office. When she arrived at the defendant's office after having taken the tranquilizers, the defendant instructed her to remove her clothes and to put a surgical gown over her underwear. She was placed on a reclining chair in the defendant's treatment room and given an injection of valium. She fell asleep, and, on at least two separate occasions, awoke to find the defendant engaged in sexual intercourse with her. Although the defendant's female assistant had been present when the victim arrived, she had been sent out of the office on each occasion prior to the assault.

The defendant argues that the evidence of the earlier offense should have been excluded because most of the similarities between the incidents reflect standard podiatric practices rather than criminal activities. We reject the defendant's argument for two reasons. First, the state presented expert testimony that neither the defendant's use of sedatives to induce sleep nor his practice of having patients disrobe was considered standard podiatric practice for the type of ambulatory surgical procedure performed by the defendant. Consequently, even the defendant's podiatric procedure can be considered unusual. Second, and more important, the fact that some of the similarities between the offenses were legal or relatively common occurrences when standing alone does not, as the defendant argues, negate the uniqueness of the offenses when viewed as a whole. It is the distinctive combination of actions which forms the "signature" or modus operandi of the crime; *State* v. *Esposito,* supra, 171–72; *State* v. *Braman,* supra, 679; and it is this "criminal logo" which justifies the inference that the individual who committed the first offense also committed the second. *State* v. *Mandrell,* supra, 151–52; *State* v. *Esposito,* supra, 171. In both the present case and the prior offense, the defendant exploited his professional position to isolate, sedate, and assault young female patients who were rendered incapable of resisting by the use of tranquilizing drugs. We conclude that the trial court correctly determined that the circumstances of both offenses were sufficiently similar to be probative of a common design or plan. See *State* v. *Hauck,* 172 Conn. 140, 146–47, 374 A.2d 150 (1976); *People* v. *Wojahn,* 169 Cal. App. 2d 135, 140, 147, 337 P.2d 192 (1959); *Rhine* v. *State,* 336 P.2d 913, 916–17, 922 (Okla. Crim. 1959).

Having determined that the proffered evidence was relevant to a proper purpose, we must next review whether the probative value of the evidence outweighed

its prejudicial impact. The primary responsibility for conducting the prejudicial-probative balancing test rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion. *State* v. *Mandrell,* supra, 152; *State* v. *Shindell,* supra, 136; *State* v. *Johnson,* 190 Conn. 541, 548–49, 461 A.2d 981 (1983). We will make every reasonable presumption in favor of upholding the trial court's ruling. *State* v. *Johnson,* supra, 549.

After a hearing held outside the presence of the jury, the trial court ruled that the probative value of the evidence surpassed its prejudicial impact. In reaching this conclusion, the court rejected the defendant's argument that, because the prior incident had occurred more than three years before the assaults at issue in the present case, the probative value of the evidence was nil and militated toward exclusion of the testimony altogether. We agree with the trial court's conclusion.

The remoteness in time of a prior incident is rarely, standing alone, determinative of the admissibility of prior crimes evidence. *United States* v. *Smith,* 432 F.2d 1109, 1112 (7th Cir. 1970); *State* v. *Simerly,* 463 S.W.2d 846, 848 (Mo. 1971); *Elliott* v. *State,* 600 P.2d 1044, 1048 (Wyo. 1979); annot., 88 A.L.R.3d 8, 13–14 (1978). Rather, it is one factor to be considered by the trial court in weighing the relative probative and prejudicial impacts of the evidence. *State* v. *Esposito,* supra, 169–70; *State* v. *Howard,* 187 Conn. 681, 686 n.3, 447 A.2d 1167 (1982); McCormick, supra, p. 565. Where the probative value is strong, the evidence may be admissible in spite of significant time gaps between the offenses. See *Demmert* v. *State,* 565 P.2d 155, 156–58 (Alaska 1977) (seven years not too remote); *State* v. *Simerly,* supra, 848 (eight years not too remote); *State* v. *Cardoza,* 465 A.2d 200, 203 (R.I. 1983) (five years not too remote).

In the present case, we conclude that the trial court correctly determined that the probative value of the evidence was not significantly diminished by the lapse of three years between the incidents. The striking similarity between the offenses rendered the evidence highly probative. To lessen the prejudicial effect, the trial court carefully instructed the jury concerning the limited use for which the evidence was being offered, and expressly cautioned that the lapse of three years could have affected the witness's "ability to recall the events accurately." In view of the inherently imprecise nature of the balancing process, the care with which the trial court weighed the evidence, and the limiting instructions given to the jury, we are satisfied that the trial court did not abuse its discretion in concluding that the probative value of the evidence exceeded its prejudicial effect.

The defendant argues, however, that even if this court determines that the evidence of the earlier offense was admissible under the ordinary rules governing prior misconduct evidence, the disputed testimony should nevertheless have been excluded for an independent reason: because the incident to which the testimony referred formed the basis of criminal charges for which the defendant had been granted, and had successfully completed, accelerated rehabilitation pursuant to General Statutes § 54-56e.[3] In accordance with the

---

[3] At the time of the defendant's prior offense, General Statutes (Rev. to 1981) § 54-56e provided: "Sec. 54-56e. (Formerly Sec. 54-76p). ACCELERATED PRETRIAL REHABILITATION. There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime, not of a serious nature. The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to an accused who, the court believes, will probably not offend again and who has no previous record of conviction of crime and who states under oath in open court under the penalties of perjury that he has never had such program invoked in his behalf, provided the defendant shall agree thereto and provided notice has been given by the accused, on a form approved by rule of court, to the victim or victims of such crime,

provisions of General Statutes § 54-142a,[4] all police, court, and prosecution records in connection with these dismissed charges had subsequently been erased. The defendant contends that, since the charges were ultimately dismissed and the erased records could not properly have been used against him at the trial, testimony describing the conduct which underlay those charges was equally improper and should equally have been excluded. We disagree.

The defendant's argument misperceives both the focus of prior misconduct evidence and the scope of § 54-142a, the erasure statute. Evidence of a criminal defendant's prior crimes or misconduct is offered, not to show that the defendant has a criminal record, but to establish that, because the prior conduct shares certain distinctive features with the charged conduct, it is reasonable to infer that the defendant committed the charged act in a similar manner. *State* v. *Mandrell,*

---

if any, by registered or certified mail and such victim or victims have an opportunity to be heard thereon. Unless good cause is shown, this section shall not be applicable to persons accused of a class A, class B, or class C felony or to any youth who has previously been adjudged a youthful offender under the provisions of sections 54-76b to 54-76n, inclusive. Any defendant who enters such program shall agree to the tolling of any statute of limitations with respect to such crime and to a waiver of his right to a speedy trial. Any such defendant shall appear in court and shall be released to the custody of the office of adult probation for such period, not exceeding two years, and under such conditions as the court shall order. If the defendant refuses to accept, or, having accepted, violates such conditions, his case shall be brought to trial. If such defendant satisfactorily completes his period of probation, he may apply for dismissal of the charges against him and the court, on finding such satisfactory completion, shall dismiss such charges."

[4] General Statutes § 54-142a provides in relevant part: "Sec. 54-142a. (Formerly Sec. 54-90). ERASURE OF CRIMINAL RECORDS. (a) Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination

supra, 151–52; *State* v. *Crosby,* 196 Conn. 185, 190, 491 A.2d 1092 (1985). To be relevant for this purpose, it is not necessary for the prior offense to have resulted either in an arrest or in a conviction. See *State* v. *Lizzi,* supra, 469; *State* v. *Brown,* supra, 54–55; *State* v. *Howard,* supra, 683. Such evidence may be admissible even when a prosecution for the earlier offense has resulted in an acquittal. *United States* v. *Van Cleave,* 599 F.2d 954, 957 (10th Cir. 1979); *United States* v. *Etley,* 574 F.2d 850, 853 (5th Cir. 1978); McCormick, supra, p. 564. Consequently, the fact that the defendant's earlier charges were dismissed when he satisfied the conditions of accelerated rehabilitation does not in any way lessen the relevance of the evidence in the present case.

An analysis of General Statutes § 54-142a is equally unhelpful to the defendant's position. General Statutes § 54-142a refers by its terms to "records" of criminal proceedings, mandating in subsection (a) the erasure

of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. Nothing in this subsection shall require the erasure of any record pertaining to a charge for which the defendant was found not guilty by reason of mental disease or defect or guilty but not criminally responsible by reason of mental disease or defect.

\* \* \*

"(e) The clerk of the court or any person charged with retention and control of such records in the records center of the judicial department or any law enforcement agency having information contained in such erased records shall not disclose to anyone information pertaining to any charge erased under any provision of this section and such clerk or person charged with the retention and control of such records shall forward a notice of such erasure to any law enforcement agency to which he knows information concerning the arrest has been disseminated and such disseminated information shall be erased from the records of such law enforcement agency. Such clerk or such person, as the case may be, shall provide adequate security measures to safeguard against unauthorized access to or dissemination of such records or upon the request of the accused cause the actual physical destruction of such records. No fee shall be charged in any court with respect to any petition under this section. Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath."

of "all police and court records and records of any state's attorney" pertaining to charges which have been dismissed, and prohibiting in subsection (e) the disclosure of the contents of those records by judicial or law enforcement personnel. There is no reference in the statute to disclosures by private parties or to matters extraneous to the records themselves. We have refused in the past to extend the strictures of § 54-142a beyond the classes of documents and individuals denominated therein. See *State* v. *West,* 192 Conn. 488, 496, 472 A.2d 775 (1984) (photographs and fingerprints are not "records" within the meaning of the statute); *Doe* v. *Manson,* 183 Conn. 183, 188, 438 A.2d 859 (1981) (prison records in the custody of the commissioner of corrections are not "records" within the meaning of the statute). The defendant offers no persuasive reason for us to do so here.

In the present case, the defendant has failed to establish that the disputed testimony represented a "record" within the reach of § 54-142a. In admitting the testimony, the trial court carefully distinguished between evidence based on personal knowledge and evidence based on the erased records, and limited the scope of the witness's testimony to a description of the prior incident as she remembered it. Since the witness was also the victim of the earlier assault, her personal knowledge of the events to which she testified obviously preceded, and was independent of, the court proceedings which followed. No reference was permitted to the defendant's prior arrest or prosecution, nor were any records of the prior proceedings admitted into evidence. In an analogous situation, we have recognized the legitimacy of the distinction between testimony based on independent personal knowledge and testimony based on inadmissible records, permitting the former while barring the latter. See *State* v. *White,* 169 Conn. 223, 236, 363 A.2d 143, cert. denied, 423 U.S. 1025,

96 S. Ct. 469, 46 L. Ed. 2d 399 (1975) (drug counselor's testimony based on personal observation admissible although records of the defendant's treatment were privileged under federal statutes).

Contrary to the defendant's assertion, a recognition of this distinction does not undermine the purpose of the erasure statute, which is "to protect innocent persons from the harmful consequences of a *criminal charge*" which is subsequently dismissed. (Emphasis added.) *Lechner* v. *Holmberg,* 165 Conn. 152, 160, 328 A.2d 701 (1973); *State* v. *West,* supra, 496. Prohibiting the subsequent use of records of the prior arrest and court proceedings adequately fulfills this purpose by insulating such an individual from the consequences of the prior *prosecution.* The statute does not and cannot insulate him from the consequences of his prior *actions.* Although the records of the defendant's prior prosecution were erased, the prior victim's memory of the assault remained. Because the disputed testimony was based on personal knowledge independent of the erased records, § 54-142a did not bar its admission.

The defendant makes the related argument that, since the prosecutor in the present case also prosecuted the defendant's prior offense, his awareness of the earlier incident stemmed solely from his knowledge of the contents of the erased records. The defendant claims that the prosecutor improperly used that knowledge to obtain the prior victim's testimony in the present prosecution, and that this use is tantamount to an indirect violation of § 54-142a. We are unable to address the substance of the defendant's claim, however, because he has failed to support his accusation with any evidence, other than his own assertions, that the prosecutor solicited the prior victim to testify in the present case. It is equally plausible that the prior victim independently learned of the present prosecution and volunteered to testify. The defendant concedes

that, if the witness's testimony was indeed volunteered, this claim is no longer viable. Since the record does not disclose any of the circumstances leading to the use of the disputed testimony, we cannot assume that this testimony resulted from the prosecutor's misuse of information he had obtained from the erased records.

We conclude, therefore, that the trial court properly admitted the evidence of the defendant's prior misconduct.

There is no error.

In this opinion HEALEY, DANNEHY and SANTANIELLO, Js., concurred.

SHEA, J., concurring. My only reason for writing separately in this case is that the majority opinion has failed to address on the merits the defendant's claim that the testimony of the prior victim resulted from the prosecutor's knowledge of the earlier case in which the defendant had been granted accelerated rehabilitation with the attendant consequence that the records of that incident had been erased pursuant to General Statutes § 54-142a. The opinion refuses to consider that claim because the record does not support the defendant's assertion that the prosecutor solicited the prior victim to testify in this case, speculating that "[i]t is equally plausible that the prior victim independently learned of the present prosecution and volunteered to testify." I regard that suggestion as utterly fanciful in the light of the undisputed circumstance that the prosecutor who tried the present case also had handled the earlier complaint that was disposed of by a grant of accelerated rehabilitation. Indeed, at oral argument before us, the state never disputed the defendant's assertions that the same prosecutor had handled both cases and that the prior victim had been brought in as a witness by the prosecutor. The state's silence, in the wake of the

defendant's factual claims, I view as curing any deficiency in the record as to how the state came to learn of the existence of this earlier complainant. See *Baskin's Appeal from Probate,* 194 Conn. 635, 484 A.2d 934 (1984); *Trichilo* v. *Trichilo,* 190 Conn. 774, 777, 462 A.2d 1048 (1983); *Miss Porter's School, Inc.* v. *Town Plan & Zoning Commission,* 151 Conn. 425, 429, 198 A.2d 707 (1964).

Addressing the merits of the defendant's argument that a prosecutor may not utilize information he has gained in a prior criminal case where the records have been erased, I see no merit in the claim. The erasure statutes, General Statutes §§ 54-142a and 54-142c, are intended to preclude the use of information gained from records that have been erased but not to protect the defendant from the use of information concerning the underlying conduct mentioned in those records where knowledge thereof has been acquired from other sources. The statute was not intended to obliterate the memories of persons having knowledge of the events that led to the previous aborted prosecution. The circumstance that the prosecutor in this case happened to know of the prior victim because of his contact with the earlier case in an official capacity does not bring his calling her as a witness in the present case within the prohibition of § 54-142c.

Accordingly, I agree with the result.