******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBINSON, J., with whom ZARELLA and McDON-ALD, Js., join, dissenting. I respectfully disagree with the majority's conclusion that the erasure provisions of General Statutes § 54-142a[1] do not "preclude a trial court from enhancing a defendant's sentence" pursuant to General Statutes § 53a-40b[2] "after the records pertaining to the charges for which the defendant was on pretrial release have been erased," although the state is not permitted to "use the erased records to prove the basis for the sentence enhancement under § 53a-40b." In my view, the majority's conclusion that § 54-142a allows for such an enhancement creates a world of parallel realities that contradicts the logic and purpose of that statute. Guided largely by this court's decision in *State* v. *Morowitz*, 200 Conn. 440, 512 A.2d 175 (1986), I agree instead with the Appellate Court's well reasoned conclusion that a trial court may not impose a sentence enhancement under § 53a-40b, "when, prior to the sentencing, the records relating to the arrests that led to the defendant's release on bond had been erased pursuant to § 54-142a." *State* v. *Apt*, 146 Conn. App. 641, 643, 78 A.3d 249 (2013). Accordingly, I respectfully dissent.

To provide context for the analysis that follows, I briefly frame the statutory construction matter before us.[3] It is undisputed that criminal charges against the defendant, Seth William Apt, which arose from a September 10, 2007 arrest in Manchester, were erased in accordance with § 54-142a (e), following the May 7, 2010 dismissal of those charges attendant to his completion of accelerated rehabilitation. See General Statutes § 54-56e.[4] On May 7, 2010, the state also entered a nolle prosequi on certain other charges against the defendant stemming from arrests dated December 19, 2008, and January 16, 2009. Those arrests were erased in accordance with § 54-142a (c) (1). All of these erasures took place before the defendant's June 24, 2011 sentencing on his conviction of larceny in the third degree in violation of General Statutes § 53a-124 (a) (2), a crime that he had committed in Hebron while on released on bond. At that June 24, 2011 sentencing hearing, the trial court enhanced the defendant's sentence pursuant to § 53a-40b. The key to this certified appeal, then, is whether a sentence enhancement under § 53a-40b for crimes committed while on pretrial release is permissible when the arrests occasioning that release had been erased pursuant to § 54-142a prior to sentencing, particularly given § 54-142a (e) (3), which provides: "Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath."

The statutory construction issue presented by this case raises a question of law over which our review is plenary. See, e.g., *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299, 118 A.3d 26 (2015). I agree with the majority's determination that § 54-142a is ambiguous on this point, insofar as it is subject to more than one reasonable interpretation, thus permitting resorting to extratextual materials under General Statutes § 1-2z. Id., 299–300.

Turning, then, to the relevant extratextual materials, the majority observes accurately that the legislative history of § 54-142a, and particularly, § 54-142a (e) (3), "indicates that [it] was intended to insulate people who are arrested but never convicted from the adverse societal consequences that result from having an arrest record . . . ."[5] The adverse consequences addressed by the legislators in discussing the original erasure statute concerned the general "stigma" of arrest, and the attendant negative consequences for eligibility for employment or military service. See 10 H.R. Proc., Pt. 9, 1963 Sess., pp. 3498–99, remarks of Representative Richard Duda; 10 S. Proc., Pt. 8, 1963 Sess., p. 2730, remarks of Senator Morgan McGuire. The legislature's subsequent amendments to the erasure statute emphasized the importance of addressing the fact of the arrest itself, and provided as a matter of law that a person whose arrest records had been erased could truthfully state, including under oath, that he had never been arrested.[6] See 12 H.R. Proc., Pt. 4, 1967 Sess., p. 1621, remarks of Representative John Carrozzella; 12 H.R. Proc., Pt. 5, 1967 Sess., pp. 1760–61, remarks of Representative Carl Ajello and Representative John Carrozzella; 12 S. Proc., Pt. 3, 1967 Sess., p. 1106, remarks of Senator T. Clark Hull and Senator Jay Jackson.

The purpose of § 54-142a guides my reading of our past cases interpreting that statute, particularly *State* v. *Morowitz*, supra, 200 Conn. 440. See *New England Road, Inc.* v. *Planning & Zoning Commission*, 308 Conn. 180, 186, 61 A.3d 505 (2013) ("in interpreting [statutory language] we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute"). In *Morowitz*, this court considered the claim of a defendant, a podiatrist, that his prior acts of sexual misconduct with a patient were inadmissible at his trial for the sexual assault of an anesthetized patient. *State* v. *Morowitz*, supra, 441–42. Specifically, the defendant in *Morowitz* claimed that the evidence was inadmissible, notwithstanding the "ordinary rules governing prior misconduct evidence . . . because the incident to which the testimony referred formed the basis of criminal charges for which the defendant had been granted, and had successfully completed, accelerated rehabilitation pursuant to . . . § 54-56e," thus resulting in the erasure of "all police, court, and prosecution records

in connection with these dismissed charges . . . ." Id., 447–48. The court disagreed, observing that this argument "misperceives both the focus of prior misconduct evidence and the scope of § 54-142a, the erasure statute. Evidence of a criminal defendant's prior crimes or misconduct is offered, not to show that the defendant has a criminal record, but to establish that, because the prior conduct shares certain distinctive features with the charged conduct, it is reasonable to infer that the defendant committed the charged act in a similar manner. . . . To be relevant for this purpose, it is not necessary for the prior offense to have resulted either in an arrest or in a conviction. . . . Such evidence may be admissible even when a prosecution for the earlier offense has resulted in an acquittal. . . . Consequently, the fact that the defendant's earlier charges were dismissed when he satisfied the conditions of accelerated rehabilitation does not in any way lessen the relevance of the evidence in the present case." (Citations omitted.) Id., 448–49.

This court further observed that an "analysis of . . . § 54-142a is . . . unhelpful to the defendant's position. Section 54-142a refers by its terms to 'records' of criminal proceedings, mandating in subsection (a) the erasure of 'all police and court records and records of any state's attorney' pertaining to charges which have been dismissed, and prohibiting in subsection (e) the disclosure of the contents of those records by judicial or law enforcement personnel. There is no reference in the statute to disclosures by private parties or to matters extraneous to the records themselves. We have refused in the past to extend the strictures of § 54-142a beyond the classes of documents and individuals denominated therein. See *State* v. *West*, 192 Conn. 488, 496, 472 A.2d 775 (1984) (photographs and fingerprints are not 'records' within the meaning of the statute); *Doe* v. *Manson*, 183 Conn. 183, 188, 438 A.2d 859 (1981) (prison records in the custody of the commissioner of corrections are not 'records' within the meaning of the statute). The defendant offers no persuasive reason for us to do so here." *State* v. *Morowitz*, supra, 200 Conn. 449–50. Thus, the court held in *Morowitz* that the defendant had failed "to establish that the disputed testimony represented a 'record' within the reach of § 54-142a. In admitting the testimony, the trial court carefully distinguished between evidence based on personal knowledge and evidence based on the erased records, and limited the scope of the [witness'] testimony to a description of the prior incident as she remembered it. *Since the witness was also the victim of the earlier assault, her personal knowledge of the events to which she testified obviously preceded, and was independent of, the court proceedings which followed. No reference was permitted to the defendant's prior arrest or prosecution, nor were any records of the prior proceedings admitted into evidence.*" (Emphasis added.) Id., 450.

The court further emphasized that "recognition of this distinction does not undermine the purpose of the erasure statute, which is 'to protect innocent persons from the harmful consequences of a criminal charge' which is subsequently dismissed. . . . *Prohibiting the subsequent use of records of the prior arrest and court proceedings adequately fulfills this purpose by insulating such an individual from the consequences of the prior prosecution. The statute does not and cannot insulate him from the consequences of his prior actions.* Although the records of the defendant's prior prosecution were erased, the prior victim's memory of the assault remained. Because the disputed testimony was based on personal knowledge independent of the erased records, § 54-142a did not bar its admission." (Citations omitted; emphasis altered.) Id., 451.

In my view, *Morowitz* demonstrates that the erasure statute is aimed at protecting persons from the collateral effects of criminal proceedings resulting from prior conduct, and in particular, the status of having been arrested.[7] The majority's conclusion that the state may attempt to prove the defendant's status as a person on pretrial release, despite the erasure of the police and court records pertaining to the charges leading to that status, leads to an absurd result by sanctioning the genesis of a jurisprudential Schrödinger's Cat[8] with respect to the proof of the sentence enhancement. Specifically, under § 54-142a as interpreted by the majority, the defendant may testify under oath—truthfully as a matter of law—that he has never been arrested, but third-party witnesses may testify to the contrary about the defendant's status as a person on pretrial release, and the official records that would conclusively resolve the dispute over a technical legal matter pertaining to the defendant's status as an arrested person on release; see *State* v. *Fagan*, 280 Conn. 69, 100–101, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007); are, as the majority acknowledges, categorically inadmissible.[9] In my view, the majority's endorsement of these two parallel realities is at odds with the legislature's intent, in enacting § 54-142a, namely, to protect people from the collateral consequences of arrests that did not lead to convictions.[10] This is particularly so, given that any evidence of the defendant's status as a person on pretrial release necessarily "derive[s] from erased records." *Rado* v. *Board of Education*, 216 Conn. 541, 550, 583 A.2d 102 (1990); see also id., 551–52 (noting that erasure statute "was not intended to obliterate memory or to exclude any testimony not shown to have been derived from erased records" in holding that detective could use his notebook to refresh memory before testifying in teacher termination proceeding premised on teacher's acts of wiretapping and eavesdropping, despite fact that criminal charges resulting from that conduct had been dismissed and records erased).

To this end, I also disagree with the majority's reliance on certain hypothetical examples, as well as § 54-56e, the accelerated rehabilitation statute; see footnote 4 of this dissenting opinion; in support of its construction of § 54-142a. With respect to accelerated rehabilitation, the majority accurately notes that § 54-56e (b) "plainly requires the trial court to inquire into whether a defendant previously has participated in the accelerated rehabilitation program," with certain eligibility requirements implying the historical fact of a previous arrest. See General Statutes § 54-56e (b) (defendant must swear either [1] that he has never been granted entry into program, [2] that he has only been granted entry into program for certain minor offenses or violations and that at least ten years have passed since charges were dismissed, or [3] if defendant is veteran, he has not previously been granted entry into program more than one time). I do not agree, however, with the majority's conclusion that, "[u]nder the Appellate Court's interpretation of § 54-142a (e) (3) . . . a trial court would be precluded from conducting such an inquiry because, as when a defendant is on pretrial release, participation in an accelerated rehabilitation program 'is inextricably related to the defendant's prior arrests.' " In my view, the legislature intended § 54-142a (e) (3) to protect persons from being penalized as a result of past arrests that did not lead to convictions. In contrast to this case, which presents a penalty in the form of a sentence enhancement under § 53a-40b, a criminal defendant who applies for admission into the accelerated rehabilitation program seeks the *benefit* of "avoiding protracted and potentially damaging litigation without having to admit guilt and without any requisite finding of guilt"; *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 846, 6 A.3d 1142 (2010); insofar as the program "give[s] first time offenders who have been charged with nonserious crimes a second chance to keep their criminal record clean." *State* v. *Kevalis*, 313 Conn. 590, 605, 99 A.3d 196 (2014); see also id., 606–607 (quoting Representative Christopher Shays' description of accelerated rehabilitation as " 'a very attractive program' "); id., 608–609 (The court quoted Senator John Kissel's description of accelerated rehabilitation as " 'a valuable program. It works to reduce a lot of the pressures in the criminal justice system and I think a lot of people have benefitted by it. Not only victims, but also the accused and they've turned their lives around and overall I would support the bill.' "). Thus, I do not view it as inconsistent with § 54-142a (e) (3) for a defendant to answer questions relating to his eligibility for the benefit of accelerated rehabilitation, even if such eligibility might imply the fact of having been arrested previously.

I similarly disagree with the majority's reliance on a hypothetical example concerning a defendant who committed an assault on a judicial marshal while being

presented in court for arraignment, insofar as it posits that, if "the charges for which the defendant was being arraigned subsequently were dismissed and the related court records erased, the state could not introduce evidence explaining why the defendant was present in court at the time he assaulted the marshal. There simply is no reason to think that the legislature, in passing the erasure statute, would have intended to limit the state's proof in that way." In response to this hypothetical, query whether specific evidence of the defendant's presence in court as a criminal defendant at the time of the alleged assault would be admissible under the ordinary rules of evidence, regardless of § 54-142a, insofar as it is not necessary to prove the fact or location of the assault in question, and therefore would appear to be a textbook example of evidence whose prejudicial effect exceeds its probative value under § 4-3 of the Connecticut Code of Evidence.[11] Cf. *State* v. *Swain*, 101 Conn. App. 253, 268–69, 921 A.2d 712 (trial court properly excluded, as more prejudicial than probative, evidence that sexual assault complainant was incarcerated at time of trial and when she identified defendant, given that court permitted defendant to ask her about prior felony convictions and "whether the state had made any deals with her in exchange for her cooperation in the case"), cert. denied, 283 Conn. 909, 928 A.2d 539 (2007).

I, therefore, agree with the Appellate Court's conclusion that this case should not be remanded for a new hearing as to the sentence enhancement, at which the prosecution can introduce alternative evidence that the defendant was released on bond at the time he committed the Hebron larceny. *State* v. *Apt*, supra, 146 Conn. App. 649. As the Appellate Court cogently observed, such a hearing is impermissible under § 54-142a, as interpreted by *State* v. *Morowitz*, supra, 200 Conn. 450–51, because it would be "the defendant's status as a prosecuted person, not his conduct, that is at issue." *State* v. *Apt*, supra, 650 n.7. I further agree with the Appellate Court that, under § 54-142a (e) (3), "the defendant is no longer considered to have been arrested for the alleged crimes to which the records pertained. It would be wholly inconsistent to enhance the defendant's sentence for committing a crime while released on bond for charges on which, as far as the law is concerned, he was never arrested. Doing so would run counter to the erasure statute's purpose of insulating [the defendant] from the consequences of the prior prosecution." (Internal quotation marks omitted.) Id., 649–50. In my view, the Appellate Court properly reversed the judgment of the trial court imposing the sentence enhancement under § 53a-40b, and directed the trial court to "vacate the sentence enhancement and to remove the additional two years from the defendant's sentence." Id., 650.

I would, therefore, affirm the judgment of the Appel-

late Court. Accordingly, I respectfully dissent.

[1] General Statutes § 54-142a provides in relevant part: "(a) Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. . . .

"(c) (1) Whenever any charge in a criminal case has been nolled in the Superior Court . . . if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased . . . .

"(e) (1) The clerk of the court or any person charged with retention and control of such records in the records center of the Judicial Department or any law enforcement agency having information contained in such erased records shall not disclose to anyone, except the subject of the record, upon submission pursuant to guidelines prescribed by the Office of the Chief Court Administrator of satisfactory proof of the subject's identity, information pertaining to any charge erased under any provision of this section and such clerk or person charged with the retention and control of such records shall forward a notice of such erasure to any law enforcement agency to which he knows information concerning the arrest has been disseminated and such disseminated information shall be erased from the records of such law enforcement agency. Such clerk or such person, as the case may be, shall provide adequate security measures to safeguard against unauthorized access to or dissemination of such records or upon the request of the accused cause the actual physical destruction of such records, except that such clerk or such person shall not cause the actual physical destruction of such records until three years have elapsed from the date of the final disposition of the criminal case to which such records pertain. . . .

"(3) Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath. . . .

"(h) For the purposes of this section, 'court records' shall not include a record or transcript of the proceedings made or prepared by an official court reporter, assistant court reporter or monitor."

Although § 54-142a was amended in 2012; see Public Acts 2012, No. 12-133, § 23; that amendment is not relevant to the present appeal. In the interest of simplicity, I refer to the current revision of the statute.

[2] General Statutes § 53a-40b provides: "A person convicted of an offense committed while released pursuant to sections 54-63a to 54-63g, inclusive, or sections 54-64a to 54-64c, inclusive, other than a violation of section 53a-222 or 53a-222a, may be sentenced, in addition to the sentence prescribed for the offense to (1) a term of imprisonment of not more than ten years if the offense is a felony, or (2) a term of imprisonment of not more than one year if the offense is a misdemeanor."

Although § 53a-40b was the subject of a technical amendment in 2010; see Public Acts 2010, No. 10-36, § 21; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, I refer to the current revision of the statute.

[3] I agree with the background facts and procedural history set forth by the majority and the Appellate Court in *State* v. *Apt*, supra, 146 Conn. App. 644–46.

[4] General Statutes § 54-56e provides in relevant part: "(a) There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime or crimes or a motor vehicle violation or violations for which a sentence to a term of imprisonment may be imposed, which crimes or violations are not of a serious nature. Upon application by any such person for participation in the program, the court shall, but only as to the public, order the court file sealed.

"(b) The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to a defendant (1) who, the court believes, will probably not offend in the future, (2) who has no previous record of conviction of a crime or of a violation of section 14-196, subsection (c) of section 14-215, section 14-222a, subsection (a) or subdivision (1) of subsection (b) of section 14-224 or section 14-227a, and (3) who states under oath, in open court or

before any person designated by the clerk and duly authorized to administer oaths, under the penalties of perjury, (A) that the defendant has never had such program invoked on the defendant's behalf or that the defendant was charged with a misdemeanor or a motor vehicle violation for which a term of imprisonment of one year or less may be imposed and ten or more years have passed since the date that any charge or charges for which the program was invoked on the defendant's behalf were dismissed by the court, or (B) with respect to a defendant who is a veteran, that the defendant has not had such program invoked in the defendant's behalf more than once previously, provided the defendant shall agree thereto and provided notice has been given by the defendant, on a form approved by rule of court, to the victim or victims of such crime or motor vehicle violation, if any, by registered or certified mail and such victim or victims have an opportunity to be heard thereon. Any defendant who makes application for participation in such program shall pay to the court an application fee of thirty-five dollars. No defendant shall be allowed to participate in the pretrial program for accelerated rehabilitation more than two times. For the purposes of this section, 'veteran' means any person who was discharged or released under conditions other than dishonorable from active service in the armed forces as defined in section 27-103. . . .

"(f) If a defendant released to the custody of the Court Support Services Division satisfactorily completes such defendant's period of probation, such defendant may apply for dismissal of the charges against such defendant and the court, on finding such satisfactory completion, shall dismiss such charges. If the defendant does not apply for dismissal of the charges against such defendant after satisfactorily completing such defendant's period of probation, the court, upon receipt of a report submitted by the Court Support Services Division that the defendant satisfactorily completed such defendant's period of probation, may on its own motion make a finding of such satisfactory completion and dismiss such charges. . . . Upon dismissal, all records of such charges shall be erased pursuant to section 54-142a. An order of the court denying a motion to dismiss the charges against a defendant who has completed such defendant's period of probation or supervision or terminating the participation of a defendant in such program shall be a final judgment for purposes of appeal."

I note that the legislature has made several recent amendments to § 54-56e that do not affect my analysis of the present appeal. See, e.g., Public Acts 2015, No. 15-85, § 19; Public Acts 2015, No. 15-211, § 10. In the interest of simplicity, I refer to the current revision of the statute.

[5] I agree with the majority that the legislative history of § 53a-40b, the sentence enhancement statute, indicates that the legislature intended that statute, enacted in 1990, to enhance public safety by "penaliz[ing] those who commit additional crimes while they are on pretrial release . . . ." I part company from the majority, however, with respect to its conclusion that it "would thwart that purpose to interpret § 54-142a to immunize the defendant from a sentence enhancement for reasons that have nothing to do with his culpability for violating the conditions of his release." To the extent that the issue before this court concerns the effect of § 54-142a, the erasure statute, our primary focus should be on the meaning of that provision. Reduced to its logical end, the majority's excessive reliance on the purpose of § 53a-40b means that we should not interpret criminal statutes or rules of evidence in ways that favor a defendant, because doing so would frustrate their public safety purpose. This, of course, is not how we interpret criminal statutes. See, e.g., *State* v. *Cote*, 286 Conn. 603, 615, 945 A.2d 412 (2008) ("unless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state" [internal quotation marks omitted]).

[6] I disagree with the majority's observation that this legislative history "strongly supports the state's position." Because the legislative history is silent on the topic presented by this appeal, namely, the interplay between the erasure statute and its effect on a defendant's pretrial release status, I simply do not find much guidance in the recorded history standing by itself.

[7] I note that Justice Shea's concurring opinion in *Morowitz* superficially appears to support the state, insofar as it addresses, and rejects the defendant's argument that the erasure statutes "preclude the prosecutor from utiliz[ing] information he has gained in a prior criminal case where the records have been erased" because, as Justice Shea contends, the erasure statutes "are intended to preclude the use of information gained from records that have been erased but not to protect the defendant from the use of

information concerning the underlying conduct mentioned in those records where knowledge thereof has been acquired from other sources. The statute was not intended to obliterate the memories of persons having knowledge of the events that led to the previous aborted prosecution. The circumstance that the prosecutor in this case happened to know of the prior victim because of his contact with the earlier case in an official capacity does not bring his calling her as a witness in the present case within the prohibition of [General Statutes] § 54-142c." *State* v. *Morowitz*, supra, 200 Conn. 453; see also id., 452 (describing majority's suggestion that "the prior victim independently learned of the present prosecution and volunteered to testify" as "utterly fanciful in the light of the undisputed circumstance that the prosecutor who tried the present case also had handled the earlier complaint that was disposed of by a grant of accelerated rehabilitation" [internal quotation marks omitted]). I do not view Justice Shea's analysis as supporting the majority's conclusion in this case because it concerns only the prosecutor's source of the knowledge of the misconduct, namely, a prior prosecution that had been dismissed after the defendant completed accelerated rehabilitation, rather than permitting the introduction of substantive evidence of the defendant's legal status as an arrested person.

[8] "Erwin Schrödinger . . . a Viennese physicist instrumental in the early development of quantum mechanics, posed what has become known as the Schrödinger Cat Paradox. In this thought experiment, Schrödinger placed a cat inside of a box which contained an apparatus which would kill the cat [50 percent] of the time and then, without opening the box, he pondered whether the cat was alive or dead. [Schrödinger] proposed that, until he actually opened the box, the cat was neither alive nor dead, but rather existed in 'wave form' and in both states, alive and dead, simultaneously." *Hardin County Schools* v. *Foster*, 40 S.W.3d 865, 872 n.6 (Ky. 2001) (Keller, J., dissenting); see also, e.g., *Kusay* v. *United States*, 62 F.3d 192, 194 (7th Cir. 1995); *TKO Equipment Co.* v. *C & G Coal Co.*, 863 F.2d 541, 545 (7th Cir. 1988); *Busse* v. *United PanAm Financial Corp.*, 222 Cal. App. 4th 1028, 1050, 166 Cal. Rptr. 3d 520 (2014).

[9] Indeed, I agree with the defendant's argument that this court's decision in *State* v. *Fagan*, supra, 280 Conn. 69, is illustrative of the nature of the status based inquiry necessary for a sentence enhancement under § 53a-40b, as well as the significance of the arrest records—whose admission into evidence the majority precludes in the present case—in proving a defendant's eligibility for that enhancement. In *Fagan*, in considering whether a trial court properly canvassed a defendant who had pleaded guilty to part B of the two part information seeking a sentence enhancement; see id., 89; we examined whether the defendant was "entitled to a jury finding on the question of whether he was released on bond from an arrest at the time he committed the present offense." Id., 92. This court held, under the reasoning of the United States Supreme Court's decisions in *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely* v. *Washington*, 542 U.S. 296, 301–304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), that "once convicted of having committed the crimes in part A of the information, the defendant's status at the time he committed those crimes involved a legal determination, not a factual one, and that, accordingly, he was not entitled to a jury trial on the issue of his status." *State* v. *Fagan*, supra, 93–94. After considering sister state cases holding to the contrary, the court concluded that "the defendant's status as to whether he lawfully had been on release at the time of the offense for which he was convicted, a fact that he not only reasonably could not dispute but conceded in his briefs to this court, was a question that also did not require a jury determination. Under our rules of practice, a defendant may be released upon the execution of a written promise to appear or he may be released on bond. . . . Whether the defendant was released pursuant to a bond or his promise to appear and when he was so released are questions that properly can be answered by mere reference to the court file. Indeed, once the defendant was convicted under part A of the information, demonstrating that he had committed the crimes charged on the date specified, the only issue left open—whether he was on release from an arrest at the time— properly could have been the subject of judicial notice." (Citation omitted.) Id., 100–101.

[10] On the point of collateral consequences, I also take some guidance from the Vermont Supreme Court's decision in *In re Unnamed Defendant*, 189 Vt. 585, 15 A.3d 1039 (2011). In that case, the court dismissed a defendant's appeal as moot because he "received a [six month] deferred sentence on his resisting arrest conviction. The record indicates that he complied with

the probation conditions during this period and that the deferred sentence expired on the date specified," thus requiring by statute that the conviction be stricken and all related records and files be expunged. Id. Of particular interest in the present case, the court rejected the defendant's claim that the appeal was justiciable because of the stricken conviction's collateral consequences, stating that the terms of the expungement statute "expressly contradict" the defendant's argument that "[t]he conviction may still show up on [the defendant's] criminal record as an arrest and dismissal." (Internal quotation marks omitted.) Id., 586. A sentence enhancement under § 53a-40b strikes me as a classic example of a collateral consequence of an arrest. See, e.g., *State* v. *McElveen*, 261 Conn. 198, 212–15, 802 A.2d 74 (2002).

[11] I emphasize, however, my view that the location of the hypothetical assault on the judicial marshal, even if it were, for example, an implicitly incriminating location such as the well of the courtroom or the courthouse lockup, would be evidence relevant to proving the defendant's *conduct*, properly admitted under the conduct/status distinction of *State* v. *Morowitz*, supra, 200 Conn. 450–51.

———————————————