******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* SETH WILLIAM APT
(SC 19266)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Robinson and Mullins, Js.*

*Argued January 13—officially released November 10, 2015*

*Melissa Patterson*, assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Charles W. Johnson*, assistant state's attorney, for the appellant (state).

*Adele V. Patterson*, senior assistant public defender, for the appellee (defendant).

*Opinion*

PALMER, J. General Statutes § 54-142a[1] mandates the erasure of records pertaining to certain charges that do not lead to a conviction and further provides that, when such records are erased, the person charged shall be deemed to have never been arrested with respect to the erased proceedings. See General Statutes § 54-142a (e) (3). General Statutes § 53a-40b[2] provides that a trial court may enhance the sentence of a defendant who, while on pretrial release following an arrest for another offense, commits the crime for which the sentence is imposed. The dispositive issue in this certified appeal is whether the erasure provisions of § 54-142a preclude a trial court from enhancing a defendant's sentence pursuant to § 53a-40b after the records pertaining to the charges for which the defendant was on pretrial release have been erased. We conclude that, although the state may not use the erased records to prove the basis for the sentence enhancement under § 53a-40b, the erasure provisions of § 54-142a do not prohibit the imposition of a sentence enhancement in such circumstances.

A jury found the defendant, Seth William Apt, guilty of larceny in the third degree in violation of General Statutes § 53a-124 (a) (2),[3] and the state sought to have the defendant's sentence enhanced under § 53a-40b because the defendant had committed the larceny while he was released on bond following a number of previous arrests for various offenses. Prior to the hearing on the sentence enhancement, the records relating to the defendant's previous arrests had been erased in accordance with § 54-142a. Nevertheless, the trial court allowed the state to introduce those records into evidence to prove the factual basis for the enhancement under § 53a-40b and then relied on those records in finding that the defendant had committed the larceny while he was on pretrial release. The defendant appealed from the trial court's judgment to the Appellate Court, which concluded that the trial court improperly had permitted the state to introduce the erased records into evidence and, further, that the state could not seek to establish the basis for the sentence enhancement on remand because a trial court lacks the authority to impose such an enhancement when the records relating to the arrest that led to the defendant's release have been erased pursuant to § 54-142a. *State* v. *Apt*, 146 Conn. App. 641, 643, 650, 78 A.3d 249 (2013). We granted the state's petition for certification to appeal, limited to the issue of whether the Appellate Court properly concluded that the erasure statute precludes the imposition of a sentence enhancement under § 53a-40b in such circumstances. *State* v. *Apt*, 311 Conn. 902, 902–903, 83 A.3d 604 (2014).[4] Although we agree with the Appellate Court that the trial court improperly permitted the state to introduce the erased records to prove the basis for

the sentence enhancement under § 53a-40b, we also conclude that the state is not foreclosed from seeking to have the defendant's sentence enhanced on remand under that provision, as long as its proof does not include the erased records. We therefore reverse in part the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history. Prior to the incident that gave rise to this appeal, the defendant was arrested in three separate cases on three separate dates, namely, September 10, 2007, December 19, 2008, and January 16, 2009. The defendant was released on bond following all three arrests. In addition, following the September 10, 2007 arrest, the defendant applied for accelerated pretrial rehabilitation pursuant to General Statutes § 54-56e,[5] which the court, *Ward, J.*, granted.

On November 20, 2009, the defendant committed the larceny at issue in the present case, and he was arrested for that offense on March 31, 2010. On May 7, 2010, prior to trial on the larceny charge, the defendant was found to have successfully completed his program of accelerated rehabilitation in the case stemming from his September 10, 2007 arrest, and the charges in that case were dismissed. Consequently, the records relating to that arrest were erased in accordance with General Statutes §§ 54-56e (f) and 54-142a.[6] On May 7, 2010, the state also entered a nolle prosequi on the charges brought in connection with the December 19, 2008 and January 16, 2009 arrests.

On May 6, 2011, following a trial, the jury found the defendant guilty of larceny in the third degree. Prior to trial, the state had notified the court that it intended to seek a sentence enhancement under § 53a-40b. Because the defendant had filed a written objection to the enhancement, the parties agreed to postpone the hearing on the enhancement to a later date so that the court and the state could review the defendant's objection. On June 7, 2011, prior to the hearing on the enhancement, the records relating to the defendant's December 19, 2008 and January 16, 2009 arrests were erased in accordance with § 54-142a (c) (1); see footnote 1 of this opinion; because thirteen months had passed since the state nolled the charges brought in connection with those arrests.

On June 24, 2011, the trial court held a sentencing hearing at which the state sought to prove, pursuant to § 53a-40b, that the defendant had committed the larceny while he was released on bond. To that end, the state introduced into evidence the informations from the defendant's three previous cases that had been subject to erasure, as well as an appearance bond form from one of those cases. Defense counsel objected to the enhancement, arguing, first, that the defendant had a right to a jury determination of whether he had committed the larceny while he was released on bond and,

second, that the records were inadmissible because they had been erased pursuant to § 54-142a. The court overruled the objection and, relying solely on those records, found that the defendant had committed the larceny while he was on release.

On appeal to the Appellate Court, the defendant claimed that the trial court improperly had allowed the state to offer records that had been erased pursuant to § 54-142a and that he was prejudiced thereby because those records constituted the sole evidence offered by the state to prove the basis for the sentence enhancement under § 53a-40b. The defendant further maintained that, because § 54-142a bars the state from introducing those records, the state could not prove that he was released on bond when he committed the larceny of which he was convicted. Finally, the defendant argued in the alternative that he was denied due process of law because he had a right to a jury determination of whether he committed the larceny while he was on pretrial release.

The Appellate Court agreed with the defendant that the trial court improperly had allowed the state to introduce the erased records and also agreed that the state could not seek to prove the basis for the sentence enhancement at a new hearing. *State* v. *Apt*, supra, 146 Conn. App. 650. In concluding that the trial court improperly had permitted the state to introduce the erased records, the Appellate Court first observed that, "[i]n this case, it is undisputed that the necessary amount of time had elapsed to subject records relating to the defendant's prior arrests to erasure as a matter of law"; id., 648; and that the records offered by the state to prove the basis for the enhancement, namely, the informations and the appearance bond form, "clearly qualify as the type of police and court records to which the erasure statute applies. [Those] records did not fall [within] any exception listed under the erasure statute." (Internal quotation marks omitted.) Id. The Appellate Court concluded, therefore, that the records had been erased before the state introduced them. See id. The Appellate Court further concluded that the introduction "of erased records in a court proceeding against the subject of those erased records is exactly the type of disclosure that the erasure statute is designed to prevent. . . . Thus, the [trial] court erred in [allowing the state to introduce] these records into evidence. Likewise, the court's error was harmful, as the erased records were the only evidence in support of the court's determination that the defendant had committed a crime while [he was] released on bond." (Citation omitted.) Id., 649.

Turning to the issue of the appropriate remedy, the Appellate Court concluded that the state could not seek to prove the basis for the sentence enhancement at a new hearing. See id., 650. The Appellate Court rejected

the state's argument that the case "should be remanded for a new hearing as to the sentence enhancement, [at which] the prosecution [could] introduce alternative evidence that the defendant was released on bond at the time he committed the . . . larceny." Id., 649. Although recognizing that "the erasure statute does not preclude certain alternative forms of evidence, such as testimony from personal knowledge, [as] long as it is not derived from the erased records"; id.; the Appellate Court observed that, "[i]n this case . . . the sole subject of the trial court's inquiry on remand would be the defendant's pretrial release status on the particular date in question. This status is inextricably related to the defendant's prior arrests. The erasure statute provides that '[a]ny person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath.' General Statutes § 54-142a (e) (3). Thus, the defendant is no longer considered to have been arrested for the alleged crimes to which the records pertained. It would be wholly inconsistent to enhance the defendant's sentence for committing a crime while [he was] released on bond for charges on which, as far as the law is concerned, he was never arrested. Doing so would run counter to the erasure statute's purpose of 'insulating [the defendant] from the consequences of the prior prosecution.' . . . Accordingly, a new hearing is unnecessary as, regardless of the evidence produced by the state, any determination of guilt as to the sentence enhancement would violate the erasure [statute]." (Citation omitted; footnote omitted.) *State* v. *Apt*, supra, 146 Conn. App. 649–50. The Appellate Court further observed that the trial court had enhanced the defendant's sentence pursuant to § 53a-40b by adding two years to the underlying sentence for the larceny charge. Id., 650. Thus, rather than vacating the defendant's sentence and remanding the case for resentencing, the Appellate Court concluded that "the proper remedy is to vacate the sentence enhancement and to remove the additional two years from the defendant's sentence." Id. Because the Appellate Court concluded that the state could not pursue the sentence enhancement on remand as a matter of law, it declined to reach the defendant's claim that he had a right to a jury determination on the sentence enhancement issue. Id., 646 n.4.

On appeal to this court following our grant of certification, the state does not challenge the Appellate Court's conclusion that the trial court improperly had allowed the state to introduce the erased records of the defendant's prior charges. Rather, the state claims only that the Appellate Court improperly determined that the state could not seek to prove the basis for the sentence enhancement on remand. According to the state, the erasure statute does not preclude the trial court from seeking to enhance the defendant's sentence

pursuant to § 53a-40b after the records relating to the arrest for which the defendant was on pretrial release have been erased, and, because there is alternative evidence that the state can use to prove that the defendant was on pretrial release when he committed the larceny, the case should be remanded to the trial court for a new hearing at which the state can prove the basis for the sentence enhancement. The defendant contends that the Appellate Court correctly concluded that the state could not pursue the sentence enhancement matter further. Alternatively, the defendant maintains that, if we permit the state to prove the basis for the sentence enhancement at a new hearing, he has a right to a jury trial at which the state would be required to prove its case beyond a reasonable doubt. For the reasons set forth hereinafter, we agree with the state that, on remand, it is not barred from pursuing the sentence enhancement on the basis of evidence other than the erased court records. With respect to the defendant's contention that he has the right to a jury determination regarding the sentence enhancement matter, we decline to reach that claim. Accordingly, we reverse in part the judgment of the Appellate Court.

I

The state first claims that the Appellate Court incorrectly concluded that the state could not prove on remand the basis for the defendant's sentence enhancement under § 53a-40b because § 54-142a categorically bars the trial court from imposing such an enhancement when, as in the present case, the records pertaining to the charges for which the defendant was on pretrial release have been erased.[7] We conclude that the state is not precluded from pursuing a sentence enhancement on remand.

The parties agree that, as a general rule, when an appellate court reverses a judgment of conviction due to the improper admission of evidence, the appropriate remedy is to vacate the judgment and to remand the case for a new trial. See, e.g., *State* v. *Gray*, 200 Conn. 523, 539, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). This is true even when there would have been insufficient evidence to sustain the conviction in the absence of the improperly admitted evidence. See id., 538–39. "[When] a reversal of a conviction is not a result of insufficiency of evidence but is predicated on . . . the reception of inadmissible evidence . . . a remand for a new trial is proper, and an appellate court should not review the remaining evidence to determine whether it is sufficient to sustain the conviction." Id., 539. As we observed in *Gray*, without the benefit of this rule, the state "would have to assume every ruling by the trial court on the evidence to be erroneous and [marshal] and offer every bit of relevant and competent evidence," which "would adversely affect the administration of justice . . . ."

Id., 538. Thus, merely because the only evidence on which the state relied in the present case to prove the sentence enhancement, namely, the erased court records, subsequently has been determined to be inadmissible would not, ordinarily, preclude the state from proving the basis for that enhancement on remand.

In the present case, however, the Appellate Court interpreted § 54-142a to prohibit the trial court from imposing the sentence enhancement under § 53a-40b because the records relating to the arrest for which the defendant was on pretrial release had been erased prior to the imposition of the enhancement. Thus, for present purposes, our inquiry focuses on the proper interpretation of §§ 53a-40b and 54-142a. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Moulton*, 310 Conn. 337, 357, 78 A.3d 55 (2013).

Section 53a-40b authorizes the trial court to impose an additional term of imprisonment when a person is "convicted of an offense committed while released pursuant to sections 54-63a to 54-63g, inclusive, or sections 54-64a to 54-64c, inclusive . . . ." In turn, General Statutes §§ 54-63a through 54-63g and 54-64a through 54-64c set forth the procedures to be followed for the release of a person pending trial, sentencing or appeal. In the present case, the trial court found that the defendant was subject to the enhancement because the state had proven that he committed the underlying felony, larceny in the third degree, while he was on release pending trial on other offenses.

Section 54-142a (e) (3) provides that "[a]ny person who shall have been the subject of . . . an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath." As we have explained, the Appellate Court concluded

that the state could not retry the defendant under § 53a-40b because "the sole subject of the trial court's inquiry" when deciding whether to impose an enhancement is "the defendant's pretrial release status on the particular date in question," which, the court reasoned, "is inextricably related to the defendant's prior arrests." *State* v. *Apt*, supra, 146 Conn. 649. We understand the reasoning of the Appellate Court to be that, because a person may be on pretrial release only if he is first arrested, a finding that the defendant was on pretrial release necessarily includes the subsidiary finding that the defendant had been arrested. In light of the fact that § 54-142a (e) (3) provides that a person whose records are erased "shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased," the Appellate Court concluded that any determination by the trial court that the defendant was on pretrial release would violate § 54-142a (e) (3). See id., 650.

The state challenges this analysis, claiming that the language in § 54-142a (e) (3) on which the Appellate Court relied operates only to restore a person's arrest record to the status quo, thus insulating him from the adverse societal effects that otherwise might result from such a record. In the state's view, however, § 54-142a (e) (3) does not purport to alter the historical fact that a person was on pretrial release on a specific date. The state further contends that the finding required by § 53a-40b—that the defendant committed an offense while he was on pretrial release—relates only to the historical fact that the defendant was on pretrial release at a point in time, and not to the fact of the arrest that preceded it. Under this interpretation of § 54-142a (e) (3), which hinges on the distinction between the defendant's status as an arrestee and his status as a person who has been released pending trial, the state is not barred from proving the basis for the defendant's sentence enhancement under § 53a-40b on remand.

We agree with the state that § 54-142a does not prohibit the imposition of a sentence enhancement in the present case. As an initial matter, we note that, although logic dictates that a person cannot be on pretrial release without first having been arrested, the language of § 53a-40b focuses only on the fact of the release, and not the arrest that preceded it. Section 53a-40b does, however, require a finding that the defendant was "released *pursuant to* sections 54-63a to 54-63g, inclusive, or sections 54-64a to 54-64c, inclusive . . . ." (Emphasis added.) With respect to persons released pending trial, these statutes expressly apply only to *arrested* persons. In addition, although § 54-142a (e) (3) provides that a person whose records have been erased is "deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased," it is unclear whether this language prohibits a court from making any finding that

relates to those proceedings. Although it may be reasonable to conclude that a person who is "deemed to have never been arrested . . . with respect to the proceedings so erased"; General Statutes § 54-142a (e) (3); also cannot be found to have been on pretrial release in connection with those proceedings, it is also reasonable to read that language as only barring the use of that person's erased arrest records and not precluding all proof of the fact that he was on pretrial release on a specific date while the proceedings that had been commenced as a result of the arrest were pending. Because the relevant statutory language does not provide a definitive answer, we turn to extratextual evidence in an effort to discern the intent of the legislature. See, e.g., *State* v. *Brown*, 310 Conn. 693, 703, 80 A.3d 878 (2013) (when statute susceptible to more than one interpretation, court may look to extratextual sources to ascertain its meaning).

The legislative history of the erasure statute, and of § 54-142a (e) (3) in particular, strongly supports the state's position. That legislative history indicates that the erasure statute was intended to insulate people who are arrested but never convicted from the adverse societal consequences that result from having an arrest record, and that the specific provision at issue in the present case, namely, § 54-142a (e) (3), was designed to further that purpose. Initially enacted in 1963; see Public Acts 1963, No. 482; the original version of the erasure statute merely provided that, upon the petition of a person who was acquitted of an offense or whose charges were nolled, the court could order the erasure of the records relating to the proceedings in question. See General Statutes (Cum. Supp. 1963) § 54-90.[8] As Representative Richard J. Duda explained, the act was necessary because "an individual who is arrested carries a penalty or a stigma of a sort despite the fact that he has not been guilty of any crime." 10 H.R. Proc., Pt. 9, 1963 Sess., p. 3499; see also 10 S. Proc., Pt. 8, 1963 Sess., p. 2730, remarks of Senator Morgan K. McGuire (indicating that, without such legislation, person who is arrested but never convicted nonetheless retains record that "often affect[s] his ability to get a job and so on").

Because the original version of the erasure statute provided only for the erasure of the records relating to a person's arrest, and did not expressly address the fact of the arrest itself, the question arose as to whether a person whose arrest records were erased lawfully could attest that he never had been arrested. See 12 H.R. Proc., Pt. 5, 1967 Sess., pp. 1760–61, remarks of Representative John A. Carrozzella (speaking in support of clarification of erasure statute "because there was some question as to exactly how [the] . . . statute operated," Representative Carrozzella noted that proposed clarifying amendment provided "that any person who has had his record so erased can answer a question have you been arrested by saying no and not be guilty of any deceit

. . . by saying no [to] the effect that he has been arrested"); id., p. 1761, remarks of Representative Carl R. Ajello ("[t]his becomes particularly important when a young person is attempting to either enter the armed forces or secure employment in a contract, defense contract, I should say, where they have got to certify as to their previous records and as to whether they have ever been arrested"). To address this concern, the legislature amended the erasure statute in 1967 to provide that "[n]o person who shall have been the subject of such an erasure order shall be deemed to have been arrested ab initio within the meaning of the general statutes with respect to the proceedings so erased." Public Acts 1967, No. 181, codified at General Statutes (Rev. to 1968) § 54-90. The 1967 amendment therefore clarified that, when a person has his arrest records erased, he may state that he never has been arrested and not be exposed to accusations that he lied about his record.[9] In 1974, the legislature again amended the statute to further clarify this point by expressly providing that such a person "may . . . swear under oath" that he never has been arrested.[10] Public Acts 1974, No. 74-163, § 2, codified at General Statutes (Rev. to 1975) § 54-90 (e).

This history makes clear that "the purpose of the erasure statute . . . is to protect innocent persons from the harmful consequences of a *criminal charge* [that] is subsequently dismissed. . . . The statute does not and cannot insulate him from the consequences of his prior *actions*." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Morowitz*, 200 Conn. 440, 451, 512 A.2d 175 (1986). As the state maintains, § 53a-40b does not purport to punish a defendant for a previous criminal charge. Rather, it provides for an enhanced sentence when a defendant violates a condition of his release, namely, that he not commit a crime during the period of release. See General Statutes § 54-64e (a) ("[w]hen any person is released pursuant to the provisions of sections 54-63a to 54-63g, inclusive, or sections 54-64a to 54-64c, inclusive, it shall be a condition of such release that the person released not commit a federal, state or local crime during the period of release"). Indeed, §§ 53a-40b and 54-64e were both enacted in 1990 as part of a bail reform effort aimed at preventing the commission of violent crimes by persons who are released on bail. The purpose of the legislation was to "provide society at large, and victims and witnesses in particular, with greater protection from criminal acts by person[s] who are on release while waiting trial or following conviction." 33 H.R. Proc., Pt. 23, 1990 Sess., pp. 8212–13, remarks of Representative Thomas D. Ritter. In addition to imposing as a condition of release that the defendant not commit a crime while he is on pretrial release and authorizing the court to enhance the defendant's sentence when he violates that condition, the legislation

required trial judges to consider the safety risk posed by the defendant when the judges set conditions of release for persons charged with most felonies; Public Acts 1990, No. 90-261, § 9, codified at General Statutes (Rev. to 1991) § 54-64a (b) (1); and to impose additional conditions or to revoke the release of a defendant who violates the conditions of his release. Public Acts 1990, No. 90-213, § 53, codified at General Statutes (Rev. to 1991) § 54-64f. Thus, it is apparent that the legislature's purpose in enacting § 53a-40b was to penalize those who commit additional crimes while they are on pretrial release, and it would thwart that purpose to interpret § 54-142a to immunize the defendant from a sentence enhancement for reasons that have nothing to do with his culpability for violating the conditions of his release.[11]

The Appellate Court's interpretation of § 54-142a (e) (3) as precluding a trial court from finding that the defendant was on pretrial release because that finding "is inextricably related to the defendant's prior arrests"; *State* v. *Apt*, supra, 146 Conn. App. 649; is also inconsistent with another related provision of the General Statutes, namely, the accelerated pretrial rehabilitation statute. See General Statutes § 54-56e. Specifically, § 54-56e (b)[12] requires that, before a court may grant accelerated rehabilitation, the defendant must state under oath in open court either that (1) he has never had such a program invoked on his behalf, (2) he has had the program invoked on his behalf but only for certain minor offenses or violations for which a term of imprisonment of one year or less could be imposed and that at least ten years have passed since the charges for which the program was invoked were dismissed, or (3) if the defendant is a veteran of the armed forces, that he previously has not had the program invoked on his behalf more than one time. Section 54-56e (b) also provides that "[n]o defendant shall be allowed to participate in the pretrial program for accelerated rehabilitation more than two times." As we mentioned previously, upon dismissal of the charges after successful completion of the program of accelerated rehabilitation, "all records of such charges shall be erased pursuant to section 54-142a." General Statutes § 54-56e (f). Thus, § 54-56e plainly requires the trial court to inquire into whether a defendant previously has participated in the accelerated rehabilitation program. Under the Appellate Court's interpretation of § 54-142a (e) (3), however, a trial court would be precluded from conducting such an inquiry because, as when a defendant is on pretrial release, participation in an accelerated rehabilitation program "is inextricably related to the defendant's prior arrests." *State* v. *Apt*, supra, 649. We therefore believe that, although the legislature has banned the use of certain arrest records by providing for their erasure, it did not intend that § 54-142a also would be used to shield a defendant from the consequences of his actions

while he is on pretrial release following an arrest for which the records have been erased.

The statutory interpretation that the defendant advances also would lead to untenable results in other situations. For example, under that interpretation, if a defendant committed an assault on a judicial marshal while being presented in court for arraignment, and the charges for which the defendant was being arraigned subsequently were dismissed and the related court records erased, the state could not introduce evidence explaining why the defendant was present in court at the time he assaulted the marshal. There simply is no reason to think that the legislature, in passing the erasure statute, would have intended to limit the state's proof in that way.

The defendant nevertheless argues that our decision in *State* v. *Fagan*, 280 Conn. 69, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007), in which we concluded that, when a defendant pleads guilty under § 53a-40b, the trial court need not canvass the defendant to ensure that the plea is knowing and voluntary; see id., 101–102; precludes the state from proving the basis for a sentence enhancement under § 53a-40b when the court records have been erased. We disagree with this claim.

In *Fagan*, after a jury found the defendant, Damon Fagan, guilty of several crimes, he entered a plea of guilty under § 53a-40b to committing the offenses while he was on pretrial release. Id., 75, 84–85. On appeal, Fagan claimed that his plea was invalid because the trial court had failed to inform him that he had a right to a jury determination on the sentence enhancement issue, which, he maintained, rendered his plea involuntary in violation of his right to due process.[13] Id., 89. Because the trial court would be required to so inform the defendant only if he did have a right to a jury determination on that issue; see id., 90–91; our analysis focused on that threshold question.

We first explained that, in *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely* v. *Washington*, 542 U.S. 296, 301–304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the United States Supreme Court held that the due process clause of the fourteenth amendment provides criminal defendants the right to a jury determination of any fact, other than that of a prior conviction, that increases a defendant's punishment beyond the statutory maximum. See *State* v. *Fagan*, supra, 280 Conn. 93. We then noted that "numerous federal courts that have applied *Apprendi* [and *Blakely*] have understood that these cases clearly do not limit a judge's authority to make legal determinations that precede a jury's fact-finding and [the] imposition of sentence." Id., 95. We also observed that "several state courts have concluded that other facts, such as the defendant's status as being on probation or parole

and the defendant's release date from prison, which may be used as a basis for a sentence enhancement, also fall within [the prior conviction] exception because they arise from and essentially are legal determinations analogous to a prior conviction." Id., 96. We then analogized the determination of a defendant's pretrial release status to a defendant's probation or parole status, explaining that "a defendant's status under [§ 53a-40b] arises out of some antecedent encounter with the criminal justice system. The record of that antecedent encounter is a judicial record of which a court may take judicial notice." (Internal quotation marks omitted.) Id., 97–98. We also observed that Fagan's pretrial release status was "a fact that he not only reasonably could not dispute but conceded in his [appellate] briefs . . . ." Id., 100. Finally, we stated that "[w]hether [Fagan] was [on pretrial release] . . . and when he was so released are questions that properly can be answered by mere reference to the court file"; id., 100–101; and, consequently, the fact of Fagan's pretrial release status "properly could have been the subject of judicial notice." Id., 101. We therefore concluded that "[Fagan's] status at the time he committed [the] crimes [in question] involved a legal determination, not a factual one, and . . . accordingly, he was not entitled to a jury trial on the issue of his status." Id., 94.

The defendant asserts that our conclusion in *Fagan* precludes the state from pursuing a new hearing on the sentence enhancement in the present case because *Fagan* "is properly read to constitute a determination that the enhancement presents a legal question to be determined by the judge *based on the court records*, rather than a question of fact that could be proved by any type of evidence." (Emphasis added.) According to the defendant, because, in *Fagan*, we based our conclusion that Fagan did not have a right to a jury finding as to the sentence enhancement under § 53a-40b on the fact that his pretrial release status could be determined by mere reference to the court file, a trial court is precluded from making that determination when that file has been erased.

The defendant misreads *Fagan*. In explaining that Fagan was not entitled to a jury finding under § 53a-40b because the determination of his status could be made by taking judicial notice of the court file, we did not suggest that the trial court is limited to making that determination on the basis of court records in all cases. See *State* v. *Fagan*, supra, 280 Conn. 100–101. Rather, we were addressing the specific factual circumstances presented by that case, in which the court file from the previous arrest was still available, and Fagan actually conceded that he was on pretrial release when he committed the subsequent offenses. See id., 101. We merely explained that, when the court can take judicial notice of the court file to determine a defendant's pretrial release status, the defendant is not entitled to a jury

determination of that issue because that determination is similar to the fact of a prior conviction that the court in *Apprendi* expressly stated need not be submitted to a jury. See *Apprendi* v. *New Jersey*, supra, 530 U.S. 490.

We note, as well, that the defendant's reading of *Fagan* as requiring the trial court to make the determination of a defendant's pretrial release status solely and exclusively on the basis of the court file does not withstand scrutiny because it would unnecessarily limit the trial court's authority to impose an enhancement for reasons that have nothing to do with the purpose of § 53a-40b. Under the defendant's reading of *Fagan*, for example, that case would preclude the state from seeking an enhancement in cases in which the court file from the case in which the defendant was on pretrial release is missing. Thus, we reject the defendant's claim that *Fagan* precludes the state from pursuing a sentence enhancement pursuant to § 53a-40b when the court file has been erased.

We also reject the defendant's contention that, on remand, the state should be precluded from pursuing a new hearing on the sentence enhancement issue because the admission of any evidence concerning the defendant's pretrial release status would violate General Statutes § 54-142c (a). Section 54-142c (a) provides in relevant part that "any criminal justice agency having information contained in such erased records shall not disclose to anyone the existence of such erased records or information pertaining to any charge erased under any provision of this part, except as otherwise provided in this chapter." The defendant argues that the setting of bail is a judicial proceeding that occurred during the case for which the records were erased, and, therefore, any evidence concerning that proceeding is "information pertaining to" the erased charges that cannot be disclosed under § 54-142c (a).

The defendant's argument ignores the fact that § 54-142c (a) excepts from its nondisclosure provisions information that may be disclosed "as otherwise provided in this chapter." As the state has aptly observed, the erasure statute expressly provides that transcripts from the proceedings related to the erased charges are not considered "court records" for purposes of that statute. (Internal quotation marks omitted.) General Statutes § 54-142a (h); see footnote 1 of this opinion. Transcripts of the erased proceedings, therefore, are not subject to erasure and may be disclosed without violating § 54-142c.[14] Moreover, we previously have concluded that § 54-142a does not preclude the state from eliciting the testimony of private parties whose knowledge of the events related to a case is not derived from the erased records. For example, in *State* v. *Morowitz*, supra, 200 Conn. 440, the defendant, Lawrence J. Morowitz, a podiatrist, was charged with sexually assaulting a female patient. See id., 441. Morowitz previously had

been arrested for a similar sexual assault on another female patient, but the charges in that case were dismissed and the records erased after he successfully completed accelerated rehabilitation. Id., 442. The state introduced the testimony of the alleged victim from the dismissed case, who testified about the details of the assault. Id., 443–44. In rejecting Morowitz' claim that the erasure statute prohibited the state's use of that testimony, we observed that "[t]here is no reference in the [erasure] statute to disclosures by private parties or to matters extraneous to the records themselves." Id., 450. Recognizing the "distinction between testimony based on independent personal knowledge and testimony based on inadmissible records"; id.; we concluded that, "[b]ecause the disputed testimony was based on personal knowledge independent of the erased records, § 54-142a did not bar its admission."[15] Id., 451.

As the foregoing demonstrates, §§ 54-142a and 54-142c do not establish a per se bar on the disclosure of information relating to a case for which the records have been erased. Although the defendant argues that, in the present case, any evidence the state may offer would be inadmissible because it would have no way of procuring such evidence without disclosing information contained in the erased records, that claim is not ripe for review. We do not yet know what evidence the state will rely on if it ultimately decides to prove the basis for the defendant's sentence enhancement on remand, and it would be premature for us to determine the admissibility of evidence that the state may or may not offer in a future proceeding. Cf. *State* v. *Kemah*, 289 Conn. 411, 436–37, 957 A.2d 852 (2008) (in interlocutory appeal in which this court remanded case to trial court for it to determine, inter alia, whether complainant consented to disclosure of mental health records, defendant's claim that he had right to review records to determine whether they contained exculpatory materials, irrespective of complainant's consent, was not ripe for review). Although, as the state acknowledges, it may not use the erased records on remand, we express no opinion regarding the admissibility of any other evidence it may offer. We merely conclude that §§ 54-142a and 54-142c do not categorically preclude the state from seeking to establish the basis for the defendant's sentence enhancement in the present case by use of evidence other than the erased records.[16] Accordingly, we reject the defendant's contention that the state is barred as a matter of law from proving the basis for the defendant's sentence enhancement at a new hearing on remand.[17]

## II

The defendant also claims that, if the state is permitted to reestablish the basis for the defendant's sentence enhancement under § 53a-40b, he has a right both to a jury determination of the elements of that enhancement

and to a finding of guilt beyond a reasonable doubt. We decline to address this claim.

The following additional facts and procedural history are relevant to this issue. Prior to sentencing, defense counsel objected to the trial court's imposition of the sentence enhancement. Defense counsel maintained that, under *Apprendi* v. *New Jersey*, supra, 530 U.S. 466, and its progeny, any fact that could result in an increase in his sentence must be proven to a jury beyond a reasonable doubt and, therefore, that the trial court could not impose the enhancement in the absence of such a jury determination.[18] The trial court overruled the objection and, after finding that the defendant had committed the larceny while on pretrial release, added two years to the defendant's underlying sentence pursuant to § 53a-40b. On appeal to the Appellate Court, the defendant claimed that he was denied due process of law because the trial court enhanced his sentence for his larceny conviction without first submitting the issue of the enhancement to the jury. See *State* v. *Apt*, supra, 146 Conn. App. 646 n.4. The Appellate Court declined to address that claim, however, because it concluded that the trial court did not have the authority to impose the enhancement in the first instance. See id. Thereafter, we granted the state's petition for certification to address whether the Appellate Court improperly concluded that the state could not pursue the sentence enhancement at a new hearing. See *State* v. *Apt*, supra, 311 Conn. 902–903. Although the defendant did not file a statement of adverse rulings to be considered in the event of a new hearing; see Practice Book § 84-11; he argued in his brief that, if we conclude that the state has a right to pursue the sentence enhancement issue at a new hearing, we should address his claim under *Apprendi*.

As we discussed previously, in *State* v. *Fagan*, supra, 280 Conn. 69, this court concluded that a jury finding as to a defendant's pretrial release status was not constitutionally required because the trial court in that case determined that Fagan was on pretrial release by taking judicial notice of the court records. See id., 100–101. In the present case, the defendant does not contend that we should overrule *Fagan* and, in fact, concedes that *Fagan* controls when court records are available to prove a defendant's pretrial release status. Rather, the defendant argues that, if the state is afforded the opportunity to prove the basis for the sentence enhancement with evidence other than court records, "then it will be necessary to ascertain the import of *Apprendi* when the state seeks to introduce evidence subject to determinations of credibility and accuracy to prove the [basis for the enhancement]." Thus, although the defendant couches his claim as one challenging the propriety of the trial court's imposition of the enhancement, it appears that what he actually seeks is a ruling that he is entitled to a jury determination on remand. At this

point, however, we do not know what evidence the state will offer on remand if it ultimately decides to prove the basis for the defendant's sentence enhancement at a new hearing. Without knowing the state's evidence, we cannot assess the merits of the defendant's claim that *Apprendi* requires a jury determination of his pretrial release status when the evidence that may be offered at a new hearing to prove that status requires credibility determinations by the fact finder. See *State* v. *Riley*, 315 Conn. 637, 661–63, 110 A.3d 1205 (2015) (although this court concluded that defendant was entitled to new sentencing hearing, it declined to address defendant's claim that trial court could not impose sentence of life imprisonment without affording him opportunity to obtain early release, reasoning that, "[b]ecause the defendant's claim rest[ed] on the factual predicate of a sentence that is the functional equivalent to life imprisonment without parole, it [potentially was] unnecessary to decide whether the defendant [was] entitled to a second look"). Our conclusion in this regard finds further support in the general rule that "[c]onstitutional issues are not considered unless absolutely necessary to the decision of a case." (Internal quotation marks omitted.) *State* v. *Cofield*, 220 Conn. 38, 49–50, 595 A.2d 1349 (1991). Accordingly, we will not address the defendant's claim at this time.

The judgment of the Appellate Court is reversed insofar as it precluded the state from seeking a new hearing to establish the basis for the defendant's sentence enhancement, and the case is remanded to that court with direction to remand the case to the trial court for a new hearing on the sentence enhancement and, thereafter, for resentencing; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion ROGERS, C. J., and EVELEIGH and MULLINS, Js., concurred.

* This appeal originally was argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald and Robinson. Thereafter, Judge Mullins was added to the panel, read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision.

[1] General Statutes § 54-142a provides in relevant part: "(a) Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. . . .

* * *

"(c) (1) Whenever any charge in a criminal case has been nolled in the Superior Court . . . if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased . . . .

* * *

"(e) (1) The clerk of the court or any person charged with retention and control of such records in the records center of the Judicial Department or any law enforcement agency having information contained in such erased records shall not disclose to anyone, except the subject of the record, upon submission pursuant to guidelines prescribed by the Office of the Chief Court

Administrator of satisfactory proof of the subject's identity, information pertaining to any charge erased under any provision of this section and such clerk or person charged with the retention and control of such records shall forward a notice of such erasure to any law enforcement agency to which he knows information concerning the arrest has been disseminated and such disseminated information shall be erased from the records of such law enforcement agency. Such clerk or such person, as the case may be, shall provide adequate security measures to safeguard against unauthorized access to or dissemination of such records or upon the request of the accused cause the actual physical destruction of such records, except that such clerk or such person shall not cause the actual physical destruction of such records until three years have elapsed from the date of the final disposition of the criminal case to which such records pertain.

\* \* \*

"(3) Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath.

\* \* \*

"(h) For the purposes of this section, 'court records' shall not include a record or transcript of the proceedings made or prepared by an official court reporter, assistant court reporter or monitor."

Although § 54-142a was the subject of a recent amendment; see Public Acts 2012, No. 12-133, § 23; that amendment has no bearing on the merits of this appeal. We thus refer to the current revision of § 54-142a for convenience.

[2] General Statutes § 53a-40b provides: "A person convicted of an offense committed while released pursuant to sections 54-63a to 54-63g, inclusive, or sections 54-64a to 54-64c, inclusive, other than a violation of section 53a-222 or 53a-222a, may be sentenced, in addition to the sentence prescribed for the offense to (1) a term of imprisonment of not more than ten years if the offense is a felony, or (2) a term of imprisonment of not more than one year if the offense is a misdemeanor."

Although § 53a-40b was the subject of a recent amendment; see Public Acts 2010, No. 10-36, § 21; that amendment has no bearing on the merits of this appeal. We thus refer to the current revision of § 53a-40b for convenience.

[3] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds two thousand dollars . . . ."

[4] Specifically, we granted certification to appeal on the following issue: "Did the Appellate Court, having held that the trial court committed harmful evidentiary error by admitting erased records into evidence in support of a sentence enhancement, properly determine that the state could not pursue a rehearing on sentence enhancement?" *State* v. *Apt*, supra, 311 Conn. 902–903.

[5] General Statutes § 54-56e provides in relevant part: "(a) There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime or crimes or a motor vehicle violation or violations for which a sentence to a term of imprisonment may be imposed, which crimes or violations are not of a serious nature. Upon application by any such person for participation in the program, the court shall, but only as to the public, order the court file sealed.

"(b) The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to a defendant (1) who, the court believes, will probably not offend in the future, (2) who has no previous record of conviction of a crime or of a violation of section 14-196, subsection (c) of section 14-215, section 14-222a, subsection (a) or subdivision (1) of subsection (b) of section 14-224 or section 14-227a, and (3) who states under oath, in open court or before any person designated by the clerk and duly authorized to administer oaths, under the penalties of perjury, (A) that the defendant has never had such program invoked on the defendant's behalf or that the defendant was charged with a misdemeanor or a motor vehicle violation for which a term of imprisonment of one year or less may be imposed and ten or more years have passed since the date that any charge or charges for which the program was invoked on the defendant's behalf were dismissed by the court, or (B) with respect to a defendant who is a veteran, that the defendant has not had such program invoked in the defendant's behalf more than once previously,

provided the defendant shall agree thereto and provided notice has been given by the defendant, on a form approved by rule of court, to the victim or victims of such crime or motor vehicle violation, if any, by registered or certified mail and such victim or victims have an opportunity to be heard thereon. Any defendant who makes application for participation in such program shall pay to the court an application fee of thirty-five dollars. No defendant shall be allowed to participate in the pretrial program for accelerated rehabilitation more than two times. For the purposes of this section, 'veteran' means any person who was discharged or released under conditions other than dishonorable from active service in the armed forces as defined in section 27-103. . . ."

[6] General Statutes § 54-56e (f) provides in relevant part: "If a defendant released to the custody of the Court Support Services Division satisfactorily completes [accelerated rehabilitation], such defendant may apply for dismissal of the charges against such defendant and the court, on finding such satisfactory completion, shall dismiss such charges. . . . Upon dismissal, all records of such charges shall be erased pursuant to section 54-142a. . . ."

[7] We reiterate that, because the state concedes that the trial court improperly allowed the state to introduce the erased records into evidence and that the defendant was prejudiced thereby, the issue presented is whether the state is precluded from proving the basis for the sentence enhancement on remand.

[8] General Statutes (Cum. Supp. 1963) § 54-90 provides in relevant part: "Whenever any criminal case is nolled or the accused is found not guilty . . . the court having jurisdiction, upon petition of the arrested person or his heirs, may order all police and court records and records of the state's or prosecuting attorney pertaining to such case to be erased, provided at least three years have elapsed from the date of the arrest." (Emphasis omitted.)

[9] Number 181 of the 1967 Public Acts further amended the erasure statute to provide that cases resulting in a dismissal are subject to erasure, and to prohibit court clerks from disclosing information pertaining to erased charges.

[10] Despite the repeated statements by legislators explaining that the erasure statute was intended to further ensure that individuals who have had their charges dismissed did not face the negative societal consequences that result from an *arrest record*, the dissent asserts that this history does not provide "much guidance" on the "topic presented by this appeal" because no legislator expressly addressed the interplay between the two statutes. Footnote 6 of the dissenting opinion. In light of the aforementioned statements in the legislative record, it seems highly likely that the legislature never addressed the effect of the erasure statute on § 53a-40b simply because it never contemplated that the erasure statute would be used in this manner. This is particularly true in view of the fact that the legislative history is devoid of any suggestion that the erasure statute was intended to immunize a defendant from the consequences of conduct in which he engages after an arrest that is subsequently erased, or to prevent a court from inquiring into matters that have nothing to do with the erased records.

[11] The dissent suggests that, in determining how to apply §§ 54-142a and 53a-40b to the facts of this case, we should not consider the legislative purpose underlying § 53a-40b but, rather, that our focus should be on the meaning of § 54-142a. See footnote 5 of the dissenting opinion. Ignoring the purpose of § 53a-40b, however, is contrary to the fundamental principle of statutory interpretation that "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" by "determin[ing], in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . ." (Internal quotation marks omitted.) *State* v. *Moulton*, supra, 310 Conn. 357. Thus, when construing statutes with objectives that seem to conflict, we must do so with an eye toward effectuating the policies of *both* statutes. See, e.g., *DiLieto* v. *County Obstetrics & Gynecology Group*, *P.C.*, 297 Conn. 105, 148–55, 998 A.2d 730 (2010). That is what we have done in the present case.

The problem that results from the dissent's refusal to consider the purpose of § 53a-40b is apparent in its conclusion that allowing the state the opportunity to prove the basis for the sentence enhancement in this case "is at odds with the legislature's intent, in enacting § 54-142a, namely, to protect people from the collateral consequences of arrests that [do] not lead to convictions." Text accompanying footnote 10 of the dissenting opinion. It is quite clear from a review of the statutory scheme that, contrary to the dissent's characterization, a sentence enhancement pursuant to § 53a-40b is not a collateral consequence of an arrest. The event that triggers a defen-

dant's obligation to refrain from committing additional crimes during the pretrial period is his release following an arrest, not the arrest itself. This obligation is imposed as a condition of a defendant's pretrial release pursuant to § 54-64e, which also requires that a defendant be given written notice of the consequences of failing to abide by that condition. General Statutes § 54-64e (b). Because this condition is imposed only on those who are released, a person who is arrested and unable to post bond is not subject to a sentence enhancement under § 53a-40b if, for example, he commits a crime while he is incarcerated pending trial. Thus, the enhancement is not a collateral consequence of the arrest; rather, it is a consequence of the defendant's failure to abide by the express conditions of his release.

Finally, because a defendant is given written notice that he will be subject to a sentence enhancement if he commits a crime while he is on release, there can be no claim that it is unfair to impose that penalty on a defendant when the initial arrest is erased *after* he commits the crime for which he receives the enhancement. In fact, the dissent's interpretation would incentivize those in the defendant's position to delay any hearing on the sentence enhancement so as to reap a benefit of erasure that plainly was not contemplated by the legislature.

[12] See footnote 5 of this opinion.

[13] Before accepting a guilty plea, a trial court is required to canvass a defendant to ensure he understands that, by pleading guilty, he "is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers." *State v. Andrews*, 253 Conn. 497, 503, 752 A.2d 49 (2000). Failure to do so renders a guilty plea involuntary in violation of the defendant's due process rights. See id., 502–503.

[14] We reject the defendant's argument that § 54-142a (h) applies only to transcripts created prior to erasure. In addition to the fact that the language of the statute contains no such qualification, under the defendant's interpretation, the classification of transcripts as court records would depend on the date on which they were created, and we can discern no indication on the part of the legislature that the determination of whether a transcript may be disclosed is dependent on the date of its creation. Moreover, as the state observes, § 54-142a (h) also provides that records of a proceeding made by the court reporter or monitor are not considered court records. Thus, under the defendant's interpretation, audio recordings and notes of the proceedings made by the court reporter could be disclosed even after erasure has taken effect, but transcripts produced from those records would be subject to disclosure only if they were created prior to erasure. There is no indication in the statute that the legislature intended such an absurd result, and we decline to assign this strained reading to the statutory language.

[15] The dissent reads *Morowitz* to support its conclusion that "the erasure statute is aimed at protecting persons from the collateral effects of criminal proceedings resulting from . . . the status of having been arrested"; text accompanying footnote 7 of the dissenting opinion; and contends that our conclusion leads to an absurd result founded on what it sees as a tension between the defendant's legal status, pursuant to § 54-142a (e) (3), as a person who has not been arrested, and the notion that the state may present evidence that is not derived from the erased records to establish that the defendant was on pretrial release when he committed the larceny. According to the dissent, our interpretation results in "two parallel realities [that are] at odds with the legislature's intent" because "any evidence of the defendant's status as a person on pretrial release necessarily derive[s] from erased records." (Internal quotation marks omitted.) The dissent misreads *Morowitz* and misconstrues the statutes at issue in this case.

First, as we noted previously, the purported inconsistency that the dissent identifies simply does not exist. There is no conflict between treating a defendant as having never been arrested under § 54-142a, on the one hand, and finding that that same defendant was on pretrial release on a certain date for purposes of a sentence enhancement under § 53a-40b, on the other, because the enhancement has nothing to do with the defendant's arrest.

Second, as the dissent acknowledges, *Morowitz* endorsed a distinction between "evidence based on personal knowledge and evidence based on the erased records," concluding that "[p]rohibiting the subsequent use of records of the prior arrest and court proceedings adequately fulfills [the] purpose [of the erasure statute] . . . ." (Emphasis omitted; internal quotation marks omitted.) It is quite clear that evidence of the fact that the defendant was on pretrial release need not be derived from erased records.

As we have explained, pursuant to § 54-142a (h), transcripts of the proceedings related to erased records are not court records for purposes of the erasure statute. The dissent fails to explain why, in light of the fact that the transcripts are not subject to erasure, the state would be precluded from relying on those transcripts to prove the defendant's pretrial release status. In addition, contrary to the dissent's suggestion, it may be possible for the state to introduce the testimony of third-party witnesses whose knowledge of the defendant's pretrial release status is not derived from the court records. For example, if the defendant's roommate posted the defendant's bond and was aware of the defendant's cases, his knowledge of the defendant's pretrial release status would be derived not from the erased records but from his memory of the events to which he testified. This evidence falls squarely within the distinction we set forth in *Morowitz*, and the dissent offers no reason why it would be barred by the erasure statute.

[16] We also reject the defendant's contention that the state should be judicially estopped from arguing that § 53a-40b requires a finding of historical fact that may be proven by evidence other than court records. The defendant argues that the state's position is contrary to its argument in the Appellate Court that the issue of sentence enhancement under § 53a-40b need not be submitted to a jury because it requires a legal determination as to the defendant's status. As the state notes, it consistently has argued both that a jury finding as to the defendant's status is not required and that the proper remedy for the trial court's improper admission of evidence is to remand the case for a new hearing on the sentence enhancement issue. Because the state has not changed its position on appeal, the doctrine of judicial estoppel does not apply. See, e.g., *Dougan* v. *Dougan*, 301 Conn. 361, 372, 21 A.3d 791 (2011) ("[j]udicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding" [internal quotation marks omitted]).

In a similar vein, the defendant argues that the state should be precluded from seeking the sentence enhancement on remand because "the state forfeited any possible entitlement to a new hearing by inducing the trial court to erroneously admit the erased records." The defendant cites no authority for the proposition that the state should be penalized for relying on the evidentiary rulings of the trial court, and, as we discussed previously, our case law is clear that, when a case is reversed due to the improper admission of evidence, the proper remedy is to remand the case for a new trial. See *State* v. *Gray*, supra, 200 Conn. 538 ("The prosecution in proving its case is entitled to rely [on] the rulings of the court and proceed accordingly. If the evidence offered by the [s]tate is received after challenge and is legally sufficient to establish the guilt of the accused, the [s]tate is not obligated to go further and [to] adduce additional evidence that would be, for example, cumulative.").

[17] We therefore remand the case for a new hearing on the sentence enhancement issue. Consistent with our holding in *State* v. *Miranda*, 260 Conn. 93, 129–30, 794 A.2d 506 (adopting aggregate package theory of sentencing), cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002), the trial court must sentence the defendant anew irrespective of whether the state proves the basis for the sentence enhancement under § 53a-40b on remand.

[18] The defendant also argued that the state failed to provide adequate notice that it intended to pursue the enhancement. That claim is not before us in this appeal.